**STATE of Missouri, Respondent,**

**v.**

**Isaiah JACKSON, Appellant.**

**No. WD 33609.**

Missouri Court of Appeals,
Western District.

March 22, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and
Denied May 3, 1983.

James W. Fletcher, Public Defender, Anne Hall, George Wheeler, Asst. Public Defenders, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Charles E. Smarr, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and MAN-FORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

By the verdict of a jury appellant was found guilty on January 13, 1982, of robbery in the first degree, § 569.020, RSMo 1978. He was thereafter sentenced to 30 years imprisonment in the Division of Corrections as a persistent offender, § 558.016,

RSMo (Supp.1981). The sufficiency of the evidence to sustain the conviction is not here challenged.

█ Appellant's first point is that the trial court erred in overruling his objection and motion for mistrial after the state asked his witness, Bernard Newman, if he had been convicted of robbery in the first degree. Appellant says that conviction was on appeal and was therefore not admissible for impeachment purposes, because it was not a final judgment. Cited is § 491.050, RSMo (Supp.1981), and principally relied on is the case of *State v. Blevins,* 425 S.W.2d 155 (Mo.1968).

Prior to the 1981 amendment to § 491.-050, it provided, "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." The 1981 amendment changed the statute by the use of these words: " * * * [H]owever, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case, *and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. * * *.*" [Italics added.]

In *State v. Blevins,* supra, applying the former statute, it was held to be error to impeach the defendant by the use of a former conviction which was pending on appeal at the time of trial on this rationale: "Surely, the legislature, in enacting § 491.-050, did not intend that for the brief period between conviction in the trial court and ultimate action on appeal by the appellate court, the defendant may be impeached and his credibility affected in another case by that first trial court conviction even though it may ultimately be reversed and eliminated on appeal." 425 S.W.2d 159. The Blevins court noted that its holding was not in accord with the majority of states which had passed on the question, which seems to be correct. See Annot., 16 A.L.R.3d Credibility—Former Conviction—Appeal, 736–38 (1967 & Supp.1982).

By the enactment of the amendment of § 491.050, the legislature must be held to have changed the law from required proof of a final judgment of conviction, as held in the *Blevins* case, to mere proof that a witness has, by a trier of the fact, been found guilty of a criminal offense. All this goes to is the determination by a trier of the fact that a witness has not measured up to the standards of honesty and believability because of an inability to conform to the requirements of the law as based upon a *finding* of guilty of prior criminal convictions. The change in the law is governed by a rule of statutory construction: *Kilbane v. Director of Department of Revenue,* 544 S.W.2d 9, 11[3, 4] (Mo. banc 1976), quoted *Gross v. Merchants-Produce Bank,* 390 S.W.2d 591, 597 (Mo.App.1965), " 'In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by the state appellate courts, and that in amending a statute or in enacting a new one on the same subject, it is ordinarily the intent of the legislature to effect some change in the existing law. If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act. (Citing cases.)' " The *Kilbane* court concluded that the legislature changed the prior statute relating to sales tax on purchases made by duly licensed physicians, dentists and veterinarians and used in their practices, making such purchases subject to the sales tax, and to hold otherwise would make the 1947 amendment accomplish nothing and it would have been a useless act. In enacting the 1981 amendment to § 491.-050, in accordance with *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 41[6] (Mo. 1969); and *Darrah v. Foster,* 355 S.W.2d 24, 31[12] (Mo.1962), the General Assembly is presumed to have been aware of the construction placed upon former § 491.050 in *State v. Blevins,* supra, by the Supreme Court, and remedied that situation that a mere finding of guilty by a trier of the fact

was a sufficient basis for the impeachment of a witness, without the necessity of the judgment becoming final. Any other result would render the above italicized words of the amendment meaningless and the amendment a useless act. The amendment brings Missouri within the ambit of the law of the majority of jurisdictions which have dealt with the subject. Point I is overruled.

Appellant's second point is that the court erred in refusing to accept his guilty plea to first degree robbery and first degree assault. The matter came up thus: Appellant, his attorney, and the prosecutor were parties to a plea bargain agreement whereby appellant would plead guilty to both charges in exchange for 25 year sentences on both counts to run concurrently. The robbery took place in the Pioneer Grill, 12th and Baltimore in Kansas City. Appellant was carrying a sawed-off shotgun, and his brother, Granville, had a pistol. Appellant received money from the cash register from a waitress. There were two off-duty policemen in the grill, brothers Robert and Eugene Kinser. As appellant finished collecting the money and turned to leave, Robert Kinser shot him three times and he fell to the ground. Granville ran out the door with Robert Kinser in pursuit, then appellant got up, ran out the door, and Eugene Kinser followed him, identifying himself as a police officer and calling for him to stop. Appellant then turned around, pointed the shotgun at Eugene and fired it. Eugene, from behind a barricade of concrete uprights on the building, fired three shots at appellant and he went down. Robert Kinser, in the meantime, pursued Granville Jackson down an alley, confronted him and shot him three times. Granville died from the wounds. The foregoing account of what happened is from the trial testimony.

On the hearing on the plea bargain, this occurred during appellant's examination by the trial court: "Q. And were you attempting to shoot back at the person that was firing at you? A. Yes, I was attempting to shoot back. * * * A. * * * I know the gun was fired and it went off, and I was trying to point, but it was at such an angle it couldn't have possibly hit him. Q.

How many times did you fire it? A. Once. Q. Was it a single shot? A. No, it was a pump shotgun, but there were two shells in it. Q. But you only fired once? A. I only fired once. Q. Was it your intention to shoot the person that was shooting at you? A. No, but it was a reaction from being shot in the leg. It was an impulsive, instinctive reaction. Q. To do what? A. It just happened, it just went off. * * * Q. Mr. Jackson, when you fired the shotgun there, were you attempting to kill or cause serious physical injury to this detective? A. No. I didn't attempt to kill him. It was more instinctive than anything." The trial court then stated that it was not in a position to find that the plea had a factual basis for assault in the first degree, based upon appellant's statements as to what happened, and the case would have to proceed with trial. Appellant then stated, "I had no intentions of killing anyone.", and later said, "When I wheeled around, I did shoot. I did mean harm."

Appellant says that the trial court abused its discretion in not accepting his guilty plea because it was voluntary and some indication of innocence does not invalidate the plea; and because there was a factual basis for finding him guilty of assault in the first degree [as required by Rule 24.02(e) ]. It is true, as appellant says, that there is no prohibition against accepting a guilty plea which is not based on an admission of guilt or even includes protestations of innocence. *North Carolina v. Alford,* 400 U.S. 25, 28, 91 S.Ct. 160, 162, 27 L.Ed.2d 162 (1970). See also *Howard v. State,* 627 S.W.2d 643, 645–646 (Mo.App. 1981); *Hayes v. State,* 501 S.W.2d 508, 512 (Mo.App.1973); *Haynes v. State,* 565 S.W.2d 191 (Mo.App.1978); and *Rice v. State,* 585 S.W.2d 488 (Mo. banc 1979). These Missouri cases, however, involve postconviction relief remedies by which equivocal pleas of guilty are sought to be withdrawn. More in point, and contrary to appellant's contentions, are these cases: *State v. Cotton,* 621 S.W.2d 296 (Mo.App.1981), in which defendant contended that the trial court abused its discretion in refusing to

accept his plea of guilty. The court had explained defendant's rights to be sure that any decision made would be made intelligently, knowingly and voluntarily. Defendant then pleaded guilty and the court asked him if he did or did not commit the crime, and he answered that he did not. The court informed the defendant that the plea would not be accepted if he did not commit the crime. After a short recess, he asked the court to reconsider and to proceed with the "Alford" plea, which request was denied and a plea of not guilty was entered. The court said, page 301, "It is well settled that an accused has no constitutional right to have a plea of guilty accepted. (Citing cases.) An 'Alford' plea is a guilty plea and therefore, there is no right to have such a plea accepted. The trial court did not abuse its discretion in refusing to accept the 'Alford' plea." In *State v. Douglas,* 622 S.W.2d 28 (Mo.App.1981), the court determined that there was uncertainty as to whether defendant really wanted to plead guilty. The court accepted the plea and then set it aside. In *State v. Meaney,* 563 S.W.2d 117 (Mo.App.1978), the court was found to be fully justified in rejecting a plea of guilt to homicide where defendant maintained he shot in self-defense or accidentally. In *Steward v. State,* 499 S.W.2d 830 (Mo.App.1973), the court was found justified in refusing a plea where the defendant stated, "I don't feel in my heart I robbed this man because I was under the influence of alcohol."

The words of § 565.050 (L.1977, S.B. No. 60, p. 662, § 1, eff. January 1, 1979) are: "1. A person commits the crime of assault in the first degree if: ' * * * (2) He attempts to kill or to cause serious physical injury to another person; or * * *.' " Under appellant's statements to the court in the plea bargain hearing, the answers indicated that he did not intend to kill or cause serious injury to officer Robert Kinser. His testimony at the hearing indicated that the discharge of the shotgun was instinctive or accidental, and that it could not under the facts have been pointed toward Kinser. The trial court was within its discretion in evaluating the statements and determining that there was no factual basis to support the plea under Rule 24.02(a) despite appellant's later retractions of his statements of instinctive shooting and that he did mean harm. Appellant's Point II is overruled.

The judgment is affirmed.

All concur.