**STATE of Missouri, Appellant,**

v.

**Dale Leon BACHMAN, Respondent.**

**No. WD 35299.**

Missouri Court of Appeals,
Western District.

June 5, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 31, 1984.

Application to Transfer Denied Sept. 11, 1984.

John Ashcroft, Atty. Gen. and John M. Morris, Asst. Atty. Gen., Jefferson City, for appellant.

John H. Norton of Norton, Pollard & Norton, Inc., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

This is a civil action in which the appeal is from a judgment in the form of an order to close records. The appeal is made pursuant to § 512.020, RSMo 1978. The judgment is reversed.

The present action, while civil in nature, finds its origin in a previous criminal prosecution and presents a unique issue for this court.

On June 5, 1978, respondent entered his plea of guilty to the charge of stealing by deceit a sum in excess of fifty dollars, in violation of § 560.156 and § 560.161, RSMo 1969.[1] Two other criminal charges were nolle prossed and are not involved in the instant proceedings. On July 13, 1978, the circuit court sentenced respondent to three years imprisonment, *suspended execution of sentence*, and placed respondent on five years probation. Respondent was discharged from probation on May 9, 1980. On July 20, 1983, the Governor granted

---

1. Said statute was repealed effective January 1, 1979.

respondent a pardon. On August 4, 1983, respondent filed his motion for an order, declaring the records closed. A brief record on respondent's motion was made and the circuit court ordered:

"ORDER TO CLOSE RECORDS

Now on this 4th day of August, 1983, the court takes up the Motion for Order Declaring Records Closed filed herein,

And the court, after hearing the evidence adduced, does find that said Order should be granted.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Clerk of the Circuit Court of Clay County, Missouri, close the records in the above numbered case so that they will be inaccessible to the general public or other persons except the defendant, and further that said records shall be removed from the records of the Court, administrative agencies and law enforcement agencies which are available to the public and shall be kept in separate records which are to be held confidential, and where possible, pages of the public record shall be retyped or rewritten omitting those portions of the record which deal with the Movant's case and, if retyping or rewriting is not feasible because of the permanent nature of the record books, such record entries shall be blacked out and recopied in a confidential book."

Appellant then proceeded to bring the instant appeal.

Appellant (State of Missouri) presents two points, which in summary charge that the circuit court erred in entering its order closing the records, because (1) the circuit court was without jurisdiction after respondent's discharge from probation and said order of closure was entered more than three years after that time, and (2) the circuit court lacked personal jurisdiction over indispensable parties to the action for closure.

Respondent meets appellant's above contentions by urging that the circuit court did not err in ordering closure, because the circuit court was exercising its inherent powers in light of the gubernatorial pardon, and the circuit court did not lack jurisdiction over indispensable parties as they were represented by an assistant prosecutor who, on the record, waived any objection to the closure order.

Appellate courts, in cases ordering reversal, do not always address all of the points presented by the parties. This practice is followed for judicial expediency, as well as to reduce time and cost to litigants and members of the Bar. On occasion, a particular case presents issues for the first time which dictates a full discussion of all issues raised by both parties. The instant case is just such a case.

Appellant's point (1) challenges the jurisdiction of the circuit court to enter its order of record closure, because said order was entered more than three years after the criminal conviction and sentencing, which served as the basis for the order. Appellant cites to *State ex rel. Wagner v. Ruddy*, 582 S.W.2d 692 (Mo. banc 1979) as controlling.

The present action was instituted by the filing of a motion by respondent in the *prior criminal proceedings*. The record reveals the same case number and also that the parties and the circuit court considered the motion as a part of, although perhaps ancillary to, the criminal proceedings. It is also obvious, although the particular statute is not recited or directly referenced in the proceedings, that the parties and the circuit court considered this to be a proceeding within the intent and purview of § 610.106, RSMo Supp.1981. Section 610.-106 reads:

"**610.106. Suspended sentence prior to September 28, 1981, procedure to close records.**

Any person as to whom imposition of sentence was suspended prior to September 28, 1981, may make a motion to the court in which the action was prosecuted after his discharge from the court's jurisdiction for closure of official records pertaining to the case. If the prosecuting authority opposes the motion, an infor-

mal hearing shall be held in which technical rules of evidence shall not apply. Having regard to the nature and circumstances of the offense and the history and character of the defendant and upon a finding that the ends of justice are so served, the court may order official records pertaining to the case to be closed, except as provided in section 610.120."

As an added note, § 610.120, RSMo Supp. 1981 reads as follows:

**"610.120. Records to be confidential—accessible to whom, purposes**

Records required to be closed shall not be destroyed; they shall be inaccessible to the general public and to all persons other than the defendant except as provided in this section. They shall be available only to courts, administrative agencies, law enforcement agencies, and federal agencies for purposes of prosecution, litigation, sentencing, parole consideration and to federal agencies for such investigative purposes as authorized by law or presidential executive order. All records which are closed records shall be removed from the records of the courts, administrative agencies, and law enforcement agencies which are available to the public and shall be kept in separate records which are to be held confidential and, where possible, pages of the public record shall be retyped or rewritten omitting those portions of the record which deal with the defendant's case. If retyping or rewriting is not feasible because of the permanent nature of the record books, such record entries shall be blacked out and recopied in a confidential book."

Appellant challenges the jurisdiction of the circuit court to have even entertained respondent's motion and moreover, the circuit court's entry of its order, because the criminal case had been closed and the judgment (i.e., respondent's plea of guilty—sentence of three years—*execution* of *sentence* suspended—respondent placed on five years probation) had become final as of July 13, 1978, and since respondent filed this present motion over five years subsequent to the final July 13, 1978 judgment, the circuit court no longer had jurisdiction.

In considering appellant's challenge to the circuit court's jurisdiction and also the disposition of that point, it is necessary to answer certain questions which arise. First, was respondent entitled to proceed with such a claim pursuant to or within the meaning of § 610.106, and if not, why not? Second, does the fact that respondent received a gubernatorial pardon modify, nullify, or supercede the above statute or alternatively, just how does the pardon relate to respondent's claim for closure of his criminal records? Third, does respondent have any remedy and if so, is relief thereunder limited?

In addressing the first of the above questions, the answer thereto is simply that § 610.106, by its very wording, is limited to those cases wherein a person has, by the trial court, received a *suspension of imposition of sentence* prior to September 28, 1981. If respondent were otherwise entitled to proceed under or pursuant to § 610.106, he would obviously come within the prescribed statutory date since his conviction and sentencing occurred July 13, 1978. The distinguishing fact in the instant case, and the very fact which dictates a negative answer to the question, also provides the answer to why respondent's motion does not come within the statute.

■ Respondent herein received from the circuit court, subsequent to his plea of guilty, a sentence of three years confinement in the Missouri Department of Corrections. The *execution of sentence* was suspended. Stated another way, respondent herein received a *suspended execution of sentence* and not a *suspended imposition of sentence* as prescribed by § 610.106. At this point, it might be asked, is there any difference in a *suspended imposition of sentence* as compared with a *suspended execution of sentence?* The answer is yes. The difference is significant, particularly when jurisdiction of the courts must be considered as in the instant case. In a case involving the *suspension of the*

*imposition of sentence,* there is an active criminal proceeding which is suspended. Such procedure has been referred to as a "hybrid in the law" and declared that such a proceeding "is not a final judgment", and "[b]ecause there is no final judgment, there can be no appeal from such an order," *State ex rel. Peach v. Tillman,* 615 S.W.2d 514, 517 (Mo.App.1981). *Peach* also points out that such an order "is not a conviction within the meaning of the Second Offender Act ... nor can it be used to impeach a witness..."

It follows that because of the nature of a *suspended imposition of sentence* case, the trial court, during the term of assessed probation, continues to have jurisdiction. At the end of the probation period, the trial court *"may discharge [the defendant] from the jurisdiction of the court so that a judgment of conviction may not thereafter be entered upon the verdict in that case." Peach* at 518.

█ The Missouri General Assembly has further implemented a process of addressing those cases involving a *suspended imposition of sentence* by the enactment of 610.106 and § 610.120 set forth above. Thus, under § 610.106, a person to whom an imposition of sentence was suspended prior to September 28, 1981 may file his motion before the court in which the charges were prosecuted, even after his discharge from the court's jurisdiction.

Thus, *Peach* illustrates that prior to discharge, the court's jurisdiction continues. Section 610.106 further provides a mechanism by which a person can, *even after discharge from jurisdiction of the court,* return to the original court and by way of motion in the original proceedings, seek relief relative to the closure of his criminal records. It is, of course, obvious that *this closure is not total because* § 610.106 contains certain exceptions which are set forth in § 610.120. Section 610.106 is self-limiting in another fashion in that only those persons to whom a *suspension of imposition sentence* applied prior to September 28, 1981 can take advantage of the statute.

This court notes that there is no specific statute providing for persons similarly situated as within § 610.106 but whose suspended imposition of sentence post dates September 28, 1981. Since, as will be observed infra, the instant case does not involve a date subsequent to September 28, 1981, this court offers no more discussion of this question and leaves the resolve of it to possible future cases wherein that question is squarely presented.

█ What is likewise obvious is the absence of any statutory provision for persons in the position of respondent herein, to wit, those who have been found guilty, but who, due to the order of the trial court, have received a *suspension of the execution of sentence.* Immediately, it becomes obvious that the General Assembly has excluded this latter type case. This exclusion must be observed by this court as the intent of the General Assembly to exclude the *suspended execution of sentence* cases or otherwise, such cases would have been provided for either within § 610.106/610.120 or some other statutory provision. The General Assembly is never presumed to have committed a useless act. *State v. Jackson,* 651 S.W.2d 547 (Mo.App. 1983).

It might be argued that failure to include *suspended execution of sentence* cases was either the result of oversight by the General Assembly, or in the drafting and enactment of § 610.106 and 610.120, the General Assembly considered and concluded that *suspension of imposition of sentence* and *suspension of execution of sentence* are synonymous and are one and the same thing. The fact remains that the *suspension of the imposition of sentence* and the *suspension of the execution of sentence are not* the same thing, nor do they cause a trial court to continue its performance, and hence jurisdiction, in the same way. In those cases involving the *suspension of imposition of sentence* as noted from *Peach,* the court's jurisdiction continues, and the court *may,* at the end of a prescribed period of probation or upon its order before the prescribed date, fully dis-

charge the accused and no judgment of conviction is ever entered. In those cases involving the *suspension of execution of sentence,* it has been said, *"The court may pronounce sentence and suspend its execution placing the person on probation.* This disposition differs from the suspended imposition of sentence in that under this alternative (i.e., suspension of *execution* of sentence) the defendant has a record of a conviction." *The Manual for Court Related Personnel, The New Missouri Criminal Code,* § 2.2, General Sentencing Provisions.

This court has been cited no authority upon the question of whether the trial court's jurisdiction continues to the end of the prescribed period of probation in cases, as herein, wherein there has been a conviction judgment which includes a prescribed period of probation which supports the suspension of execution of the sentence previously imposed as part of the conviction judgment.

 It would appear that the trial court in those cases involving a *suspension of execution of sentence* in which the criminal proceedings originated would have and retain jurisdiction during and until the termination of the prescribed probation period, or as is present in the instant case, termination of the probation upon its own order. This conclusion is reached by considering the continuation of jurisdiction until date of discharge in those cases involving suspended imposition of sentence. By analogy, it must follow that to carry out the intended purpose in either type of case (i.e., suspension of sentence-suspension of execution of sentence), the trial court must be considered as having continued jurisdiction until the termination of the prescribed probation period or until otherwise terminated by the sentencing court's order.

The above analogy, of course, does not control under the particular facts and circumstances of the instant case, because respondent herein initiated this action some three years and three months after his prescribed probation period had ended.

 Returning to further consideration of § 610.106 and § 610.120, it is apparent from the reading of these two statutes, in addition to the exclusion of any provision for those cases involving suspension of execution of sentence, that the language of those statutes carries a clear and definite intent, and the courts are required to accord words within any statute their plain and ordinary meaning. *State v. Burnau,* 642 S.W.2d 621 (Mo. banc 1982). There is no conceivable way that the language of the above statutes could be interpreted to include cases involving suspension of execution of sentence. The result, as it applies to this case, of course, is that respondent could not avail himself of either statute.

In contrast with the supposed argument that failure to include suspended *execution of sentence* cases within § 610.106 and § 610.120 was a legislative oversight and in addition to the constraint placed upon our courts to accord statutory words their plain meaning, *Burnau, supra,* it is as likewise conceivable that the Missouri General Assembly intentionally excluded cases involving suspension of execution of sentence because of public policy. Such an argument is not only feasible but is made sound when one considers the opposite results reached in the two types of cases. In those cases involving a *suspended imposition of sentence,* a judgment of conviction is never entered, *Peach, supra.*

 Contrary in those cases involving a *suspension of execution of sentence,* a judgment of execution is in fact entered and punishment therefor is suspended by the trial court. Thus, it could be said that the General Assembly, by enacting § 610.106 and 610.120, has recognized the difference between the two types of cases and has further implemented the "no conviction" rule (i.e., suspension of imposition of sentence) by providing a direct method (i.e., motion in the original criminal proceedings) for the nonconvicted accused or defendant of requesting closure of records. It is evident in a statutory sense that the General Assembly has not afforded the same direct

method for those who stand convicted but who have been spared the punishment of sentencing by the trial court's suspension of execution of that sentence. This may well reflect what the General Assembly perceives as the public policy upon the issue.

Holding in abeyance for the moment the question of the gubernatorial pardon, it can, in summary, be said that appellant's point (1) must be sustained because the trial court herein lacked jurisdiction over the subject matter (to wit, closure of respondent's criminal records) because of the following reasons.

First, there is no statutory provision for the filing of a motion to close records in the original criminal proceedings in cases involving suspension of execution of sentence cases. That direct method has, by § 610.106 and § 610.120, been exclusively granted to persons in those cases involving the suspension of imposition of sentence.

Second, as the record herein reflects, respondent filed his motion to close his records some three years and three months after the termination of his probation. Assuming the trial court's jurisdiction in this case continued to the date of termination of respondent's probation, and this court, by analogy has concluded that the jurisdiction did so continue, it still follows that respondent's criminal case concluded in final judgment as of the date of his probation termination, or May 9, 1980. At that point, the judgment in the criminal case became final. If the rule proclaimed in *State ex rel. Wagner v. Ruddy, supra,* is considered and applied to the instant case, then the judgment in respondent's criminal case became final the date that his three-year sentence was imposed, said date being July 13, 1978. *Wagner* at 693 holds, "The judgment in a criminal case is final for purposes of appeal when the judgment and sentence is entered ..." It is obvious that *Wagner* addressed the question of finality of a criminal judgment for the express purpose of declaring when a trial court loses jurisdiction upon the filing of a notice of appeal.

This court reads *Wagner* to have that narrow application. With such a conclusion, it follows that the rule in *Wagner* could find no application to such a case as the one herein, because if the trial court loses jurisdiction as of the date that judgment and sentence is entered (i.e., July 13, 1978), how could it be ruled that same trial court had jurisdiction to rule anything during the period of the prescribed probation? In other words, if the rule in *Wagner* controls in the instant case, how could the trial court have jurisdiction if, in a given set of circumstances, an accused violated his or her probation and the sentencing court was called upon to incarcerate the accused?

This court looks to the language in *Wagner* at 695, which states, "The judgment and sentence entered in the instant case on March 13, 1978, fully decided and disposed of all issues of the criminal proceeding against relator. It left no questions for further judgment of the court. It was neither interlocutory nor conditional in any respect. It was a final judgment both for purposes of terminating respondent's (i.e., the court) jurisdiction and of triggering relator's right to serve notice of appeal."

With the foregoing quote in mind, this court concludes that the rule in *Wagner* relates to the question of when a criminal judgment becomes final for purposes of appeal and the prohibition against a court from resentencing a defendant after the date the judgment and sentence has been entered. The instant case involves a conditional sentence and left the possibility for the sentencing court to further exercise its judgment. This arises because of the grant of probation and the potential involvement of the sentencing court, if events and circumstances were to subsequently arise, which would dictate a change in the probationary status of respondent. This court concludes that the better rule, applicable to cases such as the instant case, is that the jurisdiction of the sentencing court continues until the end of the prescribed period of probation or until such date that the probation is terminated by court order and the defendant is discharged

from probation, whichever occurs first. This rationale comports with the rule announced in *State ex rel. O'Brien v. Murphy*, 592 S.W.2d 194, 196 (Mo.App.1979), which declares, "[I]t is manifest that the court granting probation retains continuing jurisdiction over the probationer throughout the entire period of his probation." Thus, applying the rule in *O'Brien* to the instant case, the trial court herein initially would have had jurisdiction over respondent for five years, from July 13, 1978. That five-year period was reduced by the discharge of respondent from probation on May 8, 1980. On that date, May 9, 1980, the jurisdiction of the trial court ceased.

The record shows that on August 4, 1983, some three years and three months following the termination of the trial court's jurisdiction, respondent, by a motion in the original trial court and in the original criminal proceedings, sought closure of his criminal records. On August 4, 1983, the trial court had no jurisdiction over the criminal proceedings. In addition, as observed above, respondent has no statutory recourse to return to the original criminal proceedings such as is afforded an accused under § 610.106 and 610.120. At this point, appellant's point (1) is sustained and this case could be reversed without further discussion because of the lack of jurisdiction in the trial court. However, as noted above, this court determined that the disposition of this appeal, because of the unique questions this case presents, must include consideration of three questions. The answer to question number (1) above must be answered in the negative and the reasons for such answer have been set forth above.

This brings up the consideration of question number (2), that is, does the fact that respondent received a gubernatorial pardon modify, nullify, or supercede § 610.106 and 610.120, or alternatively, just how does the pardon relate to respondent's claim for closure of his criminal records?

On July 20, 1983, the Governor of Missouri, upon application by respondent, granted to respondent a gubernatorial pardon. The pertinent part of the pardon reads as follows:

I, CHRISTOPHER S. BOND, GOVERNOR OF THE STATE OF MISSOURI, have had presented to me an application for the pardoning of [respondent's name], who was at the July 1978 term, by a judgment of the Circuit Court of Clay County, sentenced for the crime of Aiding and Abetting Felonious Stealing by Deceit. After examination of the application and the facts relevant thereto, I hereby grant to [respondent's name] a full pardon from the above conviction. This pardon obliterates said conviction so that I hereby relieve [respondent's name] from the obligation to satisfy any part of the sentence for said conviction which may remain unsatisfied, restores to him all rights of citizenship forfeited by said conviction, and removes from him any legal disqualification, impediment or other legal disadvantage which may be a consequence of said conviction."

On August 4, 1983, respondent filed his motion which initiated this appeal. That motion was filed in the sentencing trial court and under the previous criminal case number. The pertinent portions of that motion read as follows:

"2. Movant further states that at the present time the case records in the Clerk's office of the Circuit Court of Clay County, Missouri, contain a record of his conviction, probation, etc., and that such public records constitute a legal disqualification, impediment and other legal disadvantages in contravention of the pardon of the Honorable Christopher S. Bond, Governor.

3. Movant further states that in order to effect the purposes of Movant's pardon, this Court should order the clerk of the Circuit Court of Clay County, Missouri, to close the records so that they will be inaccessible to the general public or other persons except the defendant, and further that said records shall be removed from the records of the Court, administrative agencies and law enforcement agencies which are available to the

public and be kept in separate records which are to be held confidential, and where possible, pages of the public record shall be retyped or rewritten omitting those portions of the record which deal with the Movant's case, and if retyping or rewriting is not feasible because of the permanent nature of the record books, such record entries should be blacked out and recopied in a confidential book."

It is obvious respondent, by his motion, sought closure of his criminal records to everyone but himself. On August 4, 1983, the trial court entered the order set forth above.

From the discussion above relative to § 610.106 and § 610.120, it has been determined that respondent's claim does not come within those statutes. Did respondent's receipt of a pardon change any of that? The answer is no. A pardon has been defined as:

"**PARDON.** An act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. . . .

**Absolute or Unconditional Pardon.** One which frees the criminal without any condition whatever. That which reaches both the punishment prescribed for the offense and the guilt of the offender. It obliterates in legal contemplation the offense itself . . . (citation omitted). It goes no further than to restore the accused to his civil rights and remit the penalty imposed for the particular offense of which he was convicted in so far as it remains unpaid." (citation omitted) *Blacks Law Dictionary* 1002–1003 (5th Ed.Rev.1979).

Thus, a pardon is the relieving of the punishment the law otherwise would demand for the commission of a criminal offense.

What respondent seeks and where the trial court erred was the misunderstanding that the pardon granted respondent carries the authority to exceed limitations imposed by statute and the body of our caselaw. A pardon carries no such authority. The only statutory guideline available is set forth within § 610.106 and 610.120, and in the case of *suspension of imposition of sentence*, a movant is not entitled to as complete of a closure as respondent requested and the trial court granted herein. If such limits are applicable to *suspension of imposition of sentence* cases and the public policy of the state not to allow defendants in cases involving the *suspension of the execution of sentence* follows the same procedural route, then it follows that defendants in the latter type of case are not entitled to any more relief than are defendants in cases involving the *suspension of imposition of sentence.*

There is yet another factor which applies to the instant case. It is obvious that both the respondent and the trial court misconstrue the range or extent of a gubernatorial pardon. Pardons are not unlimited relative to their application of various other areas of the law.

There exists three views as to the effect of a pardon on a person's conviction and the person's guilt. The first view holds that a pardon obliterates both conviction and guilt which places the offender in a position as if he or she had not committed the offense in the first place. The second view is that the conviction is obliterated but guilt remains. The third view is that neither the conviction nor guilt is obliterated. Missouri has adopted view number two.

In the case of *Guastello v. Department of Liquor Control,* 536 S.W.2d 21, 24 (Mo. banc 1976), the Missouri Supreme Court adopted view number two above. Joseph Guastello sought the renewal of a package liquor license. His application was denied on the basis of his 1961 conviction for the sale of intoxicating liquor on Sunday. Guastello had received a full gubernatorial pardon. Guastello appealed the ruling of denial. In reversing, the Missouri Supreme Court held:

"[W]e adopt View # 2 as being the most compatible, of the three alternatives,

with the power of an executive to pardon and the realities of life. As noted in the *Damiano* [*v. Burge,* 481 S.W.2d 562 (Mo. App.1972) ] opinion, such a result is consistent with the holding of this court in *Hughes v. State Board of Health,* [348 Mo. 1236, 159 S.W.2d 277 (1942) ] supra, to the extent the instant question was considered in the latter case...

'The intensive debate on this subject was initiated by the decision of the United States Supreme Court in *Ex parte Garland,* [71 U.S.] 4 Wall. 333, 18 L.Ed. 366 [1866], which arose immediately following the Civil War. In that case, the petitioner was an attorney who had been enrolled to practice before the United States Supreme Court prior to the war. During the Civil War, his state seceded and he served in the Confederate Legislature. After the war, he obtained a presidential pardon for his participation in the war. However, Congress enacted a statute requiring all members of the Bar to take an oath that they had not participated in the rebellion. Petitioner, of course, was not in a position to honestly take that oath, and he filed suit to be permitted to practice notwithstanding. The United States Supreme Court held that the pardon completely wiped out the petitioner's offense, and therefore, eliminated the necessity of the oath. In that connection, the court held as follows, 1.c. 380, 18 L.Ed. 366:

' " Such being the case, the inquiry arises as to the effect and operation of a pardon, and on this point all the authorities concur. A pardon reaches both the punishment prescribed for the offence (sic) and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction for attaching; if granted after conviction, it removes the penalties and disabilities, and restore him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

' "There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment."

'The broad language used by the Court in the *Garland* opinion proved to be the source of the extensive disagreement. As early as 1915, the argument between the courts had become so heated that Professor Williston published an article "Does a Pardon Blot Out Guilt?", 28 HLR 647, attempting to reconcile the diverse holdings. Professor Williston reviewed the many cases which had already been decided up to the date of his article on this subject. He, like many of the judges who had written on the subject, disapproved of the broad language of the *Garland* opinion. However, Professor Williston suggested that the seeming conflict of the decision could be reconciled upon the following distinction, stated at page 653 of his article:

' "The true line of distinction seems to be this: The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible."

'The fundamental distinction suggested by Professor Williston has been generally accepted and followed by the courts since the date of his article.' "

The result of the ruling in *Guastello* can be summarized as follows. The denial of a liquor license to Guastello could not stand if that denial was based upon a prior conviction alone, wherein that conviction was subsequently superceded by a full guberna-

torial pardon. Stated another way, if disqualification was based upon a prior conviction alone, the disqualification could not stand. The court, however, went on to rule that if good character which requires an absence of guilt is a necessary qualification, the offender is not automatically again qualified merely because he received a pardon.

Thus, the ruling in *Guastello* held only that the fact of conviction was obliterated and not the fact of guilt. The court in *Guastello* was not faced with the question of record closure, but that decision does provide a basis for declaring the limitation upon gubernatorial pardons.

 If it were to be held that a pardon obliterated both the records of a conviction and the fact of conviction, the net result would be the obliteration of both the conviction and the guilt. The Missouri Supreme Court in *Guastello* has declared that guilt is not obliterated. In other words, the court in *Guastello* ruled that in some circumstances, an offender's conviction (pertaining to guilt as opposed to the mere conviction) could be considered and used in future determinations involving an offender. It must logically follow that the records, *in so far as a pardon is concerned,* must remain open. The net result is that a pardon *does not* order, direct, or authorize the closure of records. See *Cohen v. Barger,* 11 Pa.Cmwlth. 617, 314 A.2d 353 (1974) for a holding that a pardon granted to an accused did not entitle him to have records expunged where the pardon was not granted for innocence.

It must be further mentioned that for purposes of deciding the effect of a gubernatorial pardon, closure and expunction are construed to mean essentially the same thing. While expunction requires the destruction of records, closure results in the records being closed to the public, see § 610.010, RSMo Supp.1984. If records are closed or expunged, the result is the same, and to permit a pardon to close records would defeat the holding in *Guastello, supra.*

There remains one additional aspect of this precise issue and one upon which the parties disagree. A question arises as to whether our courts have the inherent power to order closure of records after an accused has received a pardon. Research has failed to discover a case previously on this point within our state, but a comparison can be made with the inherent power or authority of our courts to expunge criminal records. In *Peach,* the court stated that there were no Missouri cases discussing the inherent authority of our courts, but the federal courts have determined that they have inherent equitable powers to expunge criminal records where the courts have determined it necessary to preserve basic legal rights. The court in *Peach,* however, pointed out that these powers are very narrow and are to be exercised in cases of illegal prosecution or acquittals and are not powers to be routinely used. The court in *Peach* referring to *United States v. McMains,* 540 F.2d 387 (8th Cir. 1976) pointed out that the federal court in *McMains* held that although the Federal Youth Corrections Act does not authorize the expunction of records of a conviction which has been set aside under that Act, the setting aside of the Conviction was not an "extraordinary circumstance" which warranted expunction under the inherent equitable powers of the district court.

In *Peach,* the defendant was charged by valid indictment with a felony and was found guilty by a jury, and the trial court *suspended the imposition of sentence.* The reviewing court concluded in that case there was neither an illegal prosecution nor an acquittal, and hence requisite "extraordinary circumstances" did not exist. The court went on to state at 519: "As a general rule, those cases in which a person has been granted a suspension of imposition of sentence will *not* present the extraordinary circumstances that would warrant an order expunging the criminal records surrounding that case." (emphasis added)

Respondent herein argues that the inherent equitable powers of the trial court should be exercised because "to permit members of the public to continue to have

access to arrest records, court records and other documents showing that respondent was convicted, would be contrary to the very essence of a pardon."

What respondent seeks is the interpretation and application of the powers within the pardon far beyond what our state Supreme Court has ruled in *Guastello*. Respondent also seeks an interpretation and application of the pardon beyond what relief is afforded under § 610.106 and 610.-120 as related to cases involving *suspension of imposition of sentence*. As noted above, there is public policy expressed as regards cases involving *suspension of execution of sentence* by the absence of statutory provision for relief in such cases. As further noted, that public policy is based upon the fact that those cases involving *suspension of execution of sentence* are, in fact, cases wherein a defendant stands convicted of an offense.

To permit respondent's interpretation of the effect of a pardon with regard to the inherent powers of our courts would, in effect, result in nullifying the ruling in *Guastello*. It follows from *Guastello* that a pardon does not require or authorize the expunction or closure of records.

The fact that respondent herein received a gubernatorial pardon does not, in and of itself, allow for respondent to seek or receive relief relative to the closure of his criminal records beyond what is authorized either by statute to those cases involving *suspension of imposition of sentence* or the ruling in *Guastello, supra*. It likewise follows that the pardon granted to respondent does not, in and of itself, initiate any inherent powers in our courts or broaden the powers of our courts to grant relief relative to the closure or expunction of criminal records. The pardon gives new effect to the criminal conviction of a defendant, but a pardon does not grant authority to close or expunge criminal records. Thus, the answer to question number two above regarding whether a pardon results in the nullification, modification, or superceding of any statute or case authority, is no. As regards the remainder of question number two above, the discussion above discloses the limit of a pardon on respondent's criminal records and the relationship of the pardon regarding respondent's endeavor to close his criminal records.

One question remains (number three above). As can be observed, respondent is not provided any statutory method of seeking closure of his records as is found in those cases involving the *suspension of imposition of sentence*. It can also be observed that the trial court herein lacked jurisdiction to hear respondent's *motion* for closure. At this point, it must be noted that respondent argues that the local prosecutor did not object at the time of the hearing and hence, the trial court acquired jurisdiction. The mere failure to object by the prosecutor did not confer jurisdiction upon the trial court. The trial court lacked jurisdiction because this action was brought some three years and three months after the judgment in the original criminal proceedings had become final, and as opposed to the provisions prescribed in § 610.106 and § 610.120, respondent is not afforded a statutory method to proceed by *motion* in the original criminal proceeding which has long become final.

The final question then must be considered. It must be asked, does respondent have any remedy, and if so, is relief thereunder limited?

This court rules that respondent may, in a separate civil proceeding, seek closure of his criminal records. If respondent should seek such separate relief, respondent is advised of the necessity to join as parties defendant necessary and indispensable parties. See *Cantrell v. State*, 624 S.W.2d 495, 496 (Mo.App.1981), *Huffman v. Department of Revenue*, 523 S.W.2d 107, 108 (Mo.App.1975), *Payless Pharmacy, Inc. v. Hoffert*, 589 S.W.2d 623, 624 (Mo.App. 1979), and Rule 52.04. The mere naming of the State of Missouri as party defendant will not suffice.

Having concluded that respondent has the right to seek relief in a separate civil proceeding, and further concluding that

such proceeding must include the naming of certain indispensable parties as defendants, it must be determined, in light of the pardon granted to respondent as well as the lack of statutory limitations as indicated within § 610.106 and 610.120, what limit, if any, exists as to respondent's relief.

It is evident from the record and order of the trial court herein that both respondent and the trial court interpreted the pardon as having far-reaching authority relative to the closure of respondent's criminal records. The result of the order herein was to close respondent's records to everyone except respondent. The result was in effect greater relief granted to persons in cases involving the *suspension of imposition of sentence* as prescribed by § 610.106 and § 610.120.

As noted, the pardon *does not,* in and of itself, authorize or permit closure. The pardon does not, in and of itself, initiate inherent powers of our courts to grant unlimited relief.

While it is true that there exists no statutory guideline specifically directed to cases involving *suspension of execution of sentence,* it appears by analogy that parties seeking closure of records in cases involving the *suspension of execution of sentence* should not be entitled to any more relief than those in cases involving the *suspension of imposition of sentence* as outlined by § 610.106 and § 610.120, and it is so found herein. It must be noted that the date of September 28, 1981, as prescribed within § 610.106, finds no application to cases involving suspension-of-execution-of-sentence-type cases. This conclusion finds greater support when the public policy discussed above is considered.

Thus, it is found herein that the judgment must be reversed, because the trial court lacked jurisdiction to hear and rule respondent's motion for closure of records. Should respondent elect to proceed in a separate civil proceeding, this opinion discloses certain requisites as to necessary parties as defendants and the limitation

upon any order of closure of records by the circuit court regarding the relief permitted.

Judgment reversed.

All concur.