In re Bradford Lee
**BUCKLER, Appellant,**

v.

**JOHNSON COUNTY SHERIFF'S DE-PARTMENT,** Warrensburg Police **Dept., Johnson County Prosecutor's Office and Any and All of Involved Police Organizations, Respondents.**

**No. WD 41090.**

Missouri Court of Appeals,
Western District.

Nov. 21, 1989.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Jan. 30, 1990.

Application for Transfer Sustained
March 13, 1990.

Case Retransferred June 26, 1990.

Court of Appeals Opinion Readopted
July 6, 1990.

---

James R. Wyrsch, Michael P. Joyce, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, James E. Baker, Johnson County Pros. Atty., Warrensburg, for respondents.

Before GAITAN, P.J., and MANFORD and ULRICH, JJ.

ULRICH, Judge.

Mr. Buckler appeals from an order denying his motion for the court's order directing expungement of his February 15, 1987, arrest.[1] The judgment is reversed.

Mr. Buckler contends that because of the extraordinary circumstances in the case, the trial court erred (1) in declaring that it was without inherent equitable power to expunge his February 15, 1987, arrest record, and (2) in denying his request for expungement.

On February 15, 1987, while a student at Central Missouri State University and a resident of Warrensburg, Missouri, Mr. Buckler attended a party where he met Ms. R. At the end of the evening, Ms. R. offered to give Mr. Buckler a ride back to his residence at a mobile home park. Upon arrival at Mr. Buckler's home, Ms. R. accompanied him into his trailer where, according to Mr. Buckler's testimony, the two talked for awhile, drank beer, and then engaged in consensual sexual intercourse. The following day, however, Ms. R. gave a written statement to local law enforcement officers alleging that Mr. Buckler had forcibly raped her. She showed the officers a bruise on her leg that she claimed she received from the encounter. She thought she had scratched Mr. Buckler's back.

On February 16, at approximately 9:20 p.m., Johnson County Sheriff's Deputy Eich visited Mr. Buckler at his residence. The Deputy questioned Mr. Buckler about the events of the night before. Mr. Buckler admitted having had sexual intercourse with Ms. R., but claimed that it was with her consent. He then voluntarily went to the Sheriff's office to make a statement. At the Sheriff's office, Mr. Buckler was shown Ms. R.'s statement alleging a rape had occurred which he denied. He also took off his shirt and showed Deputy Eich that there were no scratches on his back. Mr. Buckler was not arrested. He was taken back to his residence by a deputy.

At a second meeting with Deputy Eich, Mr. Buckler agreed to take a polygraph

---

1. Although Mr. Buckler commenced this action by filing a motion, the motion has been treated as a petition pursuant to Rule 53.01.

examination. However, upon advice of counsel, he refused to do so at a third meeting. At that point he was arrested for "investigation of rape," fingerprinted, and photographed. He was not presented to a judge and was released without bond. No further action was taken in the matter. An assistant Johnson County prosecutor declined prosecution.

Mr. Buckler seeks expungement of his arrest record because he has aspirations for a career in law enforcement. He is a college graduate with a degree in criminal justice and was a deputy sheriff of Platte County for two years. At trial Mr. Buckler admitted that he has not formally applied to any law enforcement agencies for employment, but he testified that he was advised by various law enforcement agencies and one of his college professors that an arrest record precludes his employment as a law enforcement officer.

In its order denying expungement, the court found that, based upon Ms. R.'s statement, probable cause existed to arrest Mr. Buckler. It also found that § 610.100, RSMo 1986,[2] controls and limits relief to "closing" Mr. Buckler's arrest record but does not provide for expungement of the record. The court found that it lacks the equitable power to order expungement of Mr. Buckler's arrest record.

■ Mr. Buckler contends that his arrest was improper because of an absence of probable cause to justify it. The absence of probable cause constitutes an exceptional circumstance to support a court order directing expungement of the record of his arrest, he says. He contends the court erred in finding that probable cause existed. "The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854–861, 43 L.Ed.2d 54 (1974) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). The arrest, while not made pursuant to an arrest warrant, was based upon a sworn complaint

and statement made by Ms. R. charging that Mr. Buckler had forcibly raped her. Mr. Buckler argues that the arrest was arbitrary because it did not take place until after he had refused a polygraph examination. The investigating officer intended to submit Mr. Buckler to a polygraph examination in furtherance of his investigation of Ms. R.'s allegations. Mr. Buckler has failed to provide any other facts to support his contention that his arrest was unreasonable. Although Ms. R.'s statement was uncorroborated, a reasonably prudent person could believe that Mr. Buckler had committed the crime alleged by Ms. R. Probable cause existed to effect the arrest. Although the arrest can be criticized as a coercive effort to obtain Mr. Buckler's consent to submit to a polygraph examination, the motivation for the arrest does not eradicate the existing probable cause.

■ Mr. Buckler also argues that his arrest was invalid because he was arrested for "investigation of rape," and not for committing rape. "Investigation of rape" was the phrase used by the deputy when Mr. Buckler was arrested. How the officer labelled the charge is not controlling of the probable cause question. *State v. Heitman,* 589 S.W.2d 249, 254 (Mo. banc 1979), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980), *reh'g denied,* 448 U.S. 912, 101 S.Ct. 29, 65 L.Ed.2d 1174 (1980). Probable cause existed for Mr. Buckler's arrest and his arrest is not otherwise invalid. However, whether Mr. Buckler's arrest on February 15, 1987, was valid is not determinative of whether the record of his arrest should be expunged.

Mr. Buckler claims the trial court's finding that it lacked inherent equitable powers to expunge the record of his February 15, 1987, arrest was error. Missouri's existing statutory scheme provides no means for a person in Mr. Buckler's position to expunge his arrest record. The trial court considered § 610.100, RSMo 1986, which reads as follows:

610.100. Arrest records, closed, when

If any person is arrested and not charged with an offense against the law within thirty days of his arrest, official records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records except as provided in section 610.120.

This statute, while allowing for closure of arrest records, does not authorize expungement. In a case upholding the constitutionality of § 610.100, RSMo 1973, the United States District Court, Eastern District of Missouri, stated, "Valid justifications support the closure or expungement of the arrest records of persons not subsequently charged or ultimately determined to be innocent." *Herald Co. v. McNeal,* 511 F.Supp. 269, 273 (E.D.Mo.1981).

Section 610.100 refers to § 610.120, which defines closure. Section 610.120 states that records which are closed shall not be destroyed. The section provides that closed records shall be inaccessible to the general public and to all persons other than the "defendant" and certain designated entities. Law enforcement agencies are included among the designated entities having access to files closed pursuant to § 610.100. The statute allows law enforcement agencies to use closed records for "such investigative purposes as authorized by law or presidential executive order." It follows logically that closed information about applicants for positions with law enforcement agencies may be viewed by law enforcement agencies and prejudicially influence a hiring decision.[3] This statutory scheme provides Mr. Buckler with the limited remedy of closure of his arrest record to virtually everyone except law enforcement personnel. It does not provide him the remedy of expungement to eradicate his record and preclude its review by anyone.

Mr. Buckler asserts that the only remedy that will redress his problem lies in the inherent equitable power of the courts to expunge his arrest record. The remedy which Mr. Buckler seeks is an extraordinary one and is not granted in routine situations. In *State ex rel. Peach v. Tillman,* 615 S.W.2d 514 (Mo.App.1981), the court discussed whether Missouri courts have inherent equitable powers to expunge records. That case observed that inherent equitable powers to expunge records are recognized by federal courts. It held that in situations presenting extraordinary circumstances such as an illegal prosecution or acquittal, Missouri courts of record have expungement power and expungement is warranted. However, the court refused to expunge the arrest record in that case because it found no extraordinary circumstances meriting expungement. The extraordinary circumstances test established in *Peach* was cited with approval by this court in *State v. Bachman,* 675 S.W.2d 41, 51 (Mo.App.1984).

While Missouri courts of record have inherent equitable power to expunge records, the expungement power is limited to cases involving illegal prosecution, acquittal, or extraordinary circumstances. *Peach,* 615 S.W.2d at 519. Mr. Buckler's situation is one of extraordinary circumstances. The apparent purpose of the arrest, to coerce a consent to permit a polygraph examination; the sum of the evidence of criminal conduct being the complaining witness's uncorroborated statement; the county prosecutor's declination to charge and prosecute the appellant; the appellant's expressed career goal to be a law enforcement officer and his prior employment and educational accomplishments to obtain his goal; the accessibility of the arrest record to law enforcement agencies, even if closed pursuant to § 610.100; the appellant's probable rejection by law enforcement agencies because of the record of his February 15, 1987, arrest; and expungement of the record constituting the only adequate remedy, collectively comprise extraordinary circumstances invoking

---

**3.** *But see, Martin v. Schmalz,* 713 S.W.2d 22, 24 (Mo.App.1986). *In holding that a private security service inappropriately used an applicant's arrest record to refuse him employment, the court relied on what it called the "uses set forth* in Sec. 610.120, [Supp.1984], i.e., prosecution, litigation, sentencing and parole purposes...." No such specific uses are, however, delineated in the statute.

the court's inherent equitable power to expunge the February 15, 1987, arrest record.

The trial court's finding that it lacked inherent equitable powers to expunge Mr. Buckler's February 15, 1987, arrest record was erroneous. Considering the evidence of record, the refusal of a circuit court to order Mr. Buckler's February 15, 1987, arrest record expunged would be an abuse of the court's discretion as a matter of law. Therefore, to remand the case to the trial court for exercise of its discretion would serve no valid purpose. The judgment is reversed, and the case is remanded with directions to enter an order directing expungement of the appellant's February 15, 1987, arrest record.

GAITAN, P.J., concurs.

MANFORD, J., dissents in separate dissenting opinion.

MANFORD, Judge, dissenting.

I must respectfully dissent.

For the most part, the majority opinion tracks the evidence disclosed on the record. However, the majority opinion leaves out what I consider to be some crucial facts.

It was established by another witness that petitioner was obviously intoxicated at the time of the alleged offense. In addition, another female student advised police officers that petitioner continuously refused to disclose his address to the complainant or anyone else. In fact, an attempt was made by complainant, without success, to determine petitioner's address from persons at one of the local dorms who allegedly knew petitioner's address. When this female student was left at her residence, neither the complainant, nor anyone else, knew petitioner's address.

The point of this is that such evidence tends to support the complaint of rape as opposed to consensual intercourse. Nonetheless, there is no question that there was probable cause to arrest petitioner and that his arrest was valid. The majority opinion concedes this issue.

My colleagues contend that the record of petitioner's arrest for rape should be expunged because of extraordinary circumstances. First of all, there is no evidence upon this record to support the conclusion of the majority that petitioner's arrest can be "criticized as a coercive effort to obtain Mr. Buckler's consent to submit to a polygraph examination." The record reveals that the investigating officer was attempting to further the investigation by using the polygraph examination and when petitioner refused the examination, the same officer arrested petitioner under the 20-hour investigation statute. There is absolutely no evidence, even by petitioner, that his arrest was an attempt to coerce a polygraph examination.

I agree with the majority opinion that the officer's labeling petitioner's arrest as one for "investigation of rape" is not decisive of anything, as was declared in *State v. Heitman*, 589 S.W.2d 249, 254 (Mo. banc 1979), cert. denied, 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980), rehearing denied, 448 U.S. 912, 101 S.Ct. 29, 65 L.Ed.2d 1174 (1980).

There is likewise no merit to petitioner's allegation that the arresting officer's actions were arbitrary. The use of polygraph examinations in furtherance of investigations has been recognized. *State ex rel. Bernsen v. City of Florissant*, 641 S.W.2d 477, 480 (Mo.App.1982). When petitioner refused such examination, this foreclosed the investigating officer from securing any further facts from petitioner, either of an inculpatory or exculpatory nature. Thus, the arrest was not an arbitrary act.

The majority opinion concludes there are extraordinary circumstances which warrant expungement of petitioner's arrest record. These factors are: (1) coercion of petitioner to take a polygraph examination; (2) the uncorroborated statement of the complainant; (3) the nonprosecution of petitioner; (4) petitioner's law enforcement career goal; (5) the availability of the arrest record to law enforcement agencies; and (6) the probable rejection of petitioner's application for a law enforcement position.

First, the majority reaches an unsupported predetermined conclusion that petitioner's arrest was merely to coerce him to

submit to a polygraph examination. The record does not support that conclusion. The majority merely concludes this on its own.

Second, there is no necessity for corroboration of the complainant's statement. There is nothing in this record to infer, let alone establish, any necessity for corroboration of the rape complaint. It is obvious from the record that the alleged victim was a college student. If there be any inference, it must be that she was competent. There is no need for corroboration. Such conclusion is nothing more than a conclusion inserted to buttress a preconceived and predetermined result reached by the majority.

Third, the majority makes much of the prosecution's declination to prosecute the petitioner. The majority knows, or at least should know, that the decision not to prosecute is not all that uncommon in criminal matters. The record indicates only a single reference to this issue, that occurring under the examination of the arrest officer.

[By the Court:] You said that you made a verbal request to Miss Young for a warrant—to ask for a warrant?

THE WITNESS: We discussed the case and I asked her, "At this time is there enough to file charges?"

THE COURT: What did she tell you?

THE DEFENDANT: She didn't think so.

THE COURT: And that was the end of that?

THE WITNESS: Yes.

THE COURT: Did you ever discuss it again with anybody after—after that time with Miss Young, before the motion for expungement came up, or was that the end of it?

THE WITNESS: I may have discussed it one more time after I obtained the statement on the 18th, but there again it was verbal and wasn't enough; that she felt that the whole issue was consent.

The majority must assume from the result it has reached that the failure, refusal and/or declaration of the prosecutor to proceed in this matter is an "extraordinary circumstance." Several possible explana-tions are available. For instance, perhaps the prosecution simply felt it could not get a conviction so declined to proceed. Is that an "extraordinary circumstance?" Hardly. Perhaps the prosecution felt the complainant failed to make a good witness. Is this an "extraordinary circumstance?" Hardly! Several like examples could be given, but the point is that the inaction by the prosecution is not an extraordinary circumstance to expunge an arrest record when that arrest was valid and based upon probable cause.

Now we come to the real reason why the majority suggests this judgment must be reversed. The majority, with a preconceived conclusion, wants this petitioner's arrest record expunged because that record might influence petitioner's potential law enforcement career. I wonder if the result would be the same by the majority if petitioner was seeking a career as an architect, draftsman, mechanic, engineer, or some equally honored career. I submit it would not.

According to the record, petitioner has never directly applied for a law enforcement position, but simply testified that others have told him that with his arrest record, he need not even try. In the first instance, such a conclusion presupposes that petitioner made such inquiry. Giving him the benefit of the doubt, the conclusion further presupposes that either petitioner would be denied the opportunity to explain all the circumstances to a potential employer, that the employer would not listen to petitioner's explanation, or that the record, standing alone, would foreclose employment.

The majority pretermits the opportunity of a law enforcement agency to fully evaluate the qualifications of petitioner to become a law enforcement officer. For such a sensitive position which could vitally affect the public interest, any agency considering petitioner's application for employment should have full information relative to petitioner's history. The majority opinion has, in my opinion, arbitrarily decided, in one fell swoop, that the complainant was lying and petitioner was being truthful.

Thus, any law enforcement agency which might become a potential employer of petitioner is denied the full facts and thus is prevented from considering whether this arrest would bear or not bear on petitioner's fitness for a law enforcement position.

In the final and most important analysis, it is not, nor should it be, the decision of petitioner's declared desire for a law enforcement career which should determine if ordinary circumstances exist. That declaration is not decisive, but obviously is determinative in the majority's thinking. The mere claim of the effect on one's personal career or personal reputation does not warrant expungement. *U.S. v. Lopez*, 704 F.Supp. 1055, 1057 (S.D.Fla.1988); *U.S. v. Singleton*, 442 F.Supp. 722, 724 (S.D.Tex. 1977).

This court has considered equitable powers of courts relative to the expungement of records. In *State v. Bachman*, 675 S.W.2d 41, 51 (Mo.App.1984), this court declared such equitable powers are to be "exercised in cases of illegal prosecutions or acquittals." Neither situation exists in the present case.

Petitioner herein has an adequate remedy at law under present statutes which foreclose his arrest record to all but the proper law enforcement agencies. There exists no extraordinary circumstances warranting expungement of petitioner's arrest record.

What in reality exists is the complaint of rape, a valid and lawful arrest, the defense of consent, a claim of potential but unverified harm to petitioner's future career (which is ·not a controlling factor) and a preconceived notion or determination by the majority that foregoing factors are "extraordinary circumstances" warranting reversal.

The foregoing elements are not "extraordinary circumstances" which warrant reversal of this judgment.

The question of whether a felony rape occurred remains unanswered and perhaps will never be answered. The fact that an arrest relative to this alleged felony might affect the personal career of the petitioner does not warrant saying to the world that petitioner was never validly arrested on such charge by expungement simply because petitioner claims such record might affect his future employment or personal reputation.

As a further point, the majority decision rests upon the assumption that the trial court had discretionary power to exercise equitable jurisdiction in this case. What the majority opinion does, in simplified terms, is to declare that the trial court had such discretionary powers which is directly contrary to the determination made by the trial court. The trial court had decided that it had no power to exercise any discretion. Yet, this court has decided there is discretionary power and then makes the most flagrant error that an appellate court can make. This error is simply that this court, under the majority opinion, substitutes this court's exercise of discretion superceding any opportunity by the trial court to act in the matter. Thus, the majority opinion now places this court in a role of fact-finder and causes the discretion of this court to be substituted for that of the trial court, a power which neither this court nor any appellate court possesses.

This judgment should be affirmed on the basis that no extraordinary circumstances exist which justify expungement of this arrest record.