**Robert HAMPTON, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 57625.**

Supreme Court of Missouri, Division No. 1.

June 11, 1973.

Harold I. Elbert, Stanley T. Bjurstrom, St. Louis, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from denial, after evidentiary hearing, of motion under Rule 27.26, V.A.M.R., to vacate and set aside judgments of conviction and sentences to seven years' imprisonment, entered upon pleas of guilty to charges of robbery, first degree, by means of a dangerous and deadly weapon, and assault with intent to kill with malice aforethought.

The transcript shows the following:

Walter L. Brady, Jr., a lawyer of some sixteen years' experience specializing in criminal trial practice, was appointed to represent Robert Hampton in the spring of 1970, on the charges in question. Originally, Mr. William Cramer had been appointed to represent defendant. He sought help from Mr. Brady and Mr. Brady was appointed cocounsel with Mr. Cramer.

Both Mr. Brady and Mr. Cramer visited their client in the city jail on at least three occasions together. They discussed the case and learned that defendant had not made any statements. They did not discuss "whether he had been advised by the police of his Miranda constitutional rights" because no statement was involved. They discussed the complaining witness and learned that defendant knew him and had seen him on the evening in question. They were advised that defendant was taken to Homer G. Phillips Hospital where he was identified by the complaining witness. He did not have a lawyer at the time. They discussed the charges; the nature and extent of the penalty, five years to life imprisonment, or to impanel a jury to consider the death penalty; and his prior conviction. They advised that negotiations for guilty pleas would be in his best interest and he authorized them to take those steps.

Mr. Brady was present with his client when he pleaded guilty. Judge Meyer asked him an extensive number of questions, i. e., whether he had been advised of the range of penalties, whether he understood that guilty pleas were an admission of guilt, whether he had been threatened; whether he was told of his right to jury trial and to confrontation of witnesses, and to determine that the court would not be bound by any recommendations on penalties. Defendant never advised Mr. Brady that he had been beaten by police.

Robert Hampton acknowledged the assistance of Mr. Brady at the time he pleaded guilty. He was arrested in January, 1970, while running between Washington and Olive on Vandeventer. When he failed to stop, "they called me a bunch of names and jumped on me * * * and hit me in the eye with a nightstick." They took him into custody around 9:00 p. m., and about fifteen minutes later presented him to the victim, Willie Moore, in the surgery department at Homer G. Phillips Hospital. Willie identified him as his assailant by nodding his head. Defendant acknowledged that he was the man who stabbed Willie. Prior to the confrontation with Willie, he was not told he had rights to a lawyer and to remain silent. He did not give any statement. After identification, his eye was treated and on the same evening he was taken to the 9th District Police Station. He was not there advised of his rights; he made no statement.

Defendant acknowledged visits from his lawyers. He discussed his case with them, particularly Mr. Brady, and was advised of his right to trial, the probability of more time from a jury because of his prior record, the nonexistence of any statement, and the lack of a lawyer at the hospital. He said the latter probably did not matter "because of the dude. He said the man knowed me anyway."

Defendant further acknowledged explanation of the consequences of pleading guilty. He recalled admitting the offenses charged upon the occasion of his guilty pleas and the recital of facts of the offenses including use of a knife. He remembered questions from Judge Meyer and being told by the court that by pleading guilty he "waived" his rights.

Defendant further acknowledged he had never been placed in a lineup, and that he had counsel upon arraignment following indictment.

While defendant was on the stand, Judge Meyer and Mr. Elbert established the grounds asserted for relief as: "One, that he [defendant] was not advised of his constitutional rights at any time before or after his arrest. * * * And, two, that he did not have counsel at this confrontation * * * at Homer G. with one Willie, the victim." There was no contention that his guilty pleas were other than voluntarily made, and defendant acknowledged that he did not claim that anyone forced him to plead guilty. For that reason, it was agreed that there was no reason to go into the proceedings that occurred at the time of the guilty pleas.

"THE COURT: As I understand it, there's no question but that Mr. Brady advised him of his rights and advised him adequately to enable him to intelligently decide to plead guilty. As I understand it, there are only two grounds: (1) that he was not advised of his constitutional rights prior to this confrontation with Willie; and (2) that he did not have counsel at the time of this confrontation.

"MR. ELBERT: That's correct."

The charges arose from an incident in the early evening of January 17, 1970; the guilty pleas were entered April 15, 1970. Subject motion was filed June 3, 1971; the hearing now transcribed was accorded October 28, 1971.

Counsel were granted leave to file suggestions and, on November 19, 1971, the court filed the decision:

"The Court finds and believes from the evidence adduced, beyond a reasonable

doubt, that on January 17, 1970, Movant was apprehended by police while he was running on Vandeventer Avenue between Washington and Olive Streets, at approximately nine p. m. and taken immediately to Homer G. Phillips Hospital; that there he was subjected to a one-on-one confrontation with one Willie Moore, the victim in the two offenses to which Movant entered his pleas of guilty; that Willie Moore had been stabbed. While it cannot be accurately determined from the evidence the exact time that had lapsed between the stabbing of Willie Moore and the one-on-one confrontation referred to above, the Court finds that it was so soon after the stabbing that Willie Moore was still in the emergency room, surgery department, of Homer G. Phillips Hospital.

"The Court further finds that Movant was not advised of any of his constitutional rights prior to said one-on-one confrontation at Homer G. Phillips Hospital nor was he provided with counsel at said confrontation.

"The Court rules, however, that neither the failure to advise Movant of his constitutional rights prior to the confrontation complained of, nor the failure to provide Movant with counsel at that time were violative of Movant's constitutional rights and that therefore such failures do not constitute grounds for vacating or setting aside the judgments and sentences imposed.

"Assuming without admitting that this Court is in error in so ruling, this Court further rules that by entering of guilty pleas, Movant waived his right to attack the judgments and sentences imposed.

"Accordingly, Movant's application for relief under Supreme Court Rule 27.26 is hereby denied."

Appellant charges the court erred: I. In denial of relief "because the failure to provide appellant with counsel and to advise him of his constitutional rights prior to presenting him to Willie at Homer Phillips Hospital was violative of appellant's Fifth and Sixth Amendment rights under the United States Constitution"; and II. " * * * in ruling that by entering guilty pleas appellant waived his right to attack the judgments and sentences imposed against him because his guilty pleas have no effect on the constitutional argument raised by appellant."

In presentation of his Point II, appellant cites well-known federal cases, e. g., McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L. Ed. 716 (1940); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L. Ed.2d 747 (1970). From these he argues that every reasonable presumption will be indulged against waiver of fundamental rights by one charged with crime; that a coerced or tainted plea of guilty deprives it of its validity as a waiver of an individual's right to assail his conviction; that a guilty plea must be intelligent and done with awareness of circumstances and consequences. In an attempt to bring himself within the ambit of his authorities and arguments, he asserts there was no finding that his guilty pleas were knowingly, voluntarily, and intelligently made, and thus he did not waive his rights to collateral attack on account of his guilty pleas.

The difficulty in appellant's position, particularly with respect to his assertions under Point II, is that the record is against him.

The statement made from the record demonstrates that defendant alleged all his grounds for relief and there was no contention that defendant's guilty pleas were other than voluntarily entered; that he did not claim he was forced to plead guilty; that it was agreed the plea proceedings need not be examined further; and that the pleas were, in fact, voluntarily made

with assistance of counsel and an understanding of the nature of the charges and the consequences of pleading guilty to them.

Accordingly, the recent pronouncement of the United States Supreme Court in Tollett, Warden v. Henderson, —— U.S. ——, 93 S.Ct. 1602, 36 L.Ed.2d 235, decided April 17, 1973, is dispositive of all questions raised by this appeal. Willie Lee Henderson, on advice of counsel, pleaded guilty to murder, first degree. He sought habeas corpus alleging deprivation of constitutional rights with respect to exclusion of Negroes from the grand jury which indicted him. The Tennessee courts concluded he had waived his claim by failure to raise it before pleading guilty. He proceeded further in United States District Court asserting the same denial of rights. Testimony was presented to show his lawyer did not inform him of his rights with respect to composition of a grand jury and how to challenge a defective indictment. The court of appeals in affirmance of the district court held that the record demonstrated no such "waiver" of constitutional rights as that term was defined in Johnson v. Zerbst, supra. The supreme court granted certiorari to decide whether a state prisoner, pleading guilty with the advice of counsel, may later obtain relief by collateral attack on constitutional grounds.

The court reviewed the effect of many of the authorities cited by appellant, particularly the "Brady trilogy," i. e., Brady v. United States and McMann v. Richardson, supra, and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), and reaffirmed that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*" —— U.S. l. c. ——, 93 S.Ct. l. c. 1608. See also Geren v. State, 473 S.W.2d 704 (Mo.1971); Shoemake v. State, 462 S. W.2d 772 (Mo. banc 1971); State v. Brown, 449 S.W.2d 664 (Mo.1970).

■ Accordingly, it may not be said on this record that the trial court's finding of waiver of the rights to attack the judgments on the grounds of failure to provide defendant with counsel [1] and advice of rights prior to his confrontation with the victim is "clearly erroneous." Rule 27.26, supra.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HOLMAN, P. J., concurs.

SEILER, J., concurs in result in separate concurring opinion filed.

BARDGETT, J., concurs and concurs in separate concurring opinion of SEILER, J.

SEILER, Judge (concurring).

I concur in the affirmance, but on the ground that there was no requirement that defendant be furnished counsel or advice thereto prior to his display to the victim, as the principal opinion acknowledges in the footnote on page 7. I do not agree that Tollett v. Henderson, —— U.S. ——, 93

---

1. It should be noted also that there is no requirement that counsel be provided at a preindictment confrontation. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Chavez, 483 S.W.2d 68, 69 [1] (Mo.1972).

S.Ct. 1602, 36 L.Ed.2d 235, decided April 17, 1973 by the United States Supreme Court is applicable. As that case points out, it did involve deprivation of constitutional rights (not so here) and it also had a stale claim aspect to it, being made for the first time 25 years later. There is nothing of that sort in the case before us.