Joseph J. GUASTELLO, Respondent,

v.

DEPARTMENT OF LIQUOR CONTROL, State of Missouri, Appellant.

No. 59146.

Supreme Court of Missouri, En Banc.

May 5, 1976.

John C. Danforth, Atty. Gen., by Michael Boicourt, Jefferson City, for appellant.

Lawrence F. Gepford and Daniel J. Matula, Kansas City, for respondent.

MORGAN, Judge.

The sole issue in this case requires that we determine the effect, if any, a gubernatorial pardon has on a "license" disabling statute.

The facts are not in dispute. On July 28, 1961, respondent pleaded guilty to two charges of selling intoxicating liquor on Sunday and was fined a total of $500. On November 22, 1972, he received a full gubernatorial pardon. Thereafter, upon application he was issued a package liquor license by the Supervisor of Liquor Control for the State of Missouri, with an expiration date of June 30, 1973. Prior to that date, an application for renewal was filed, and the Supervisor denied the same on the basis of the 1961 convictions.

Pursuant to § 311.700, RSMo 1969, a judicial review was had and the trial court reversed the Supervisor's order by reason of the pardon. On appeal, the trial court was affirmed by the Court of Appeals, Kansas City District, in a per curiam opinion wherein it was concluded that: "*Damiano v. Burge*, 481 S.W.2d 562 (Mo.App.1972), controls the present case." At the request of the Department of Liquor Control, the cause was transferred to this court for the purpose of re-examining the existing law reference the question heretofore posed.

The statute involved is § 311.060(1), which reads, in part:

> No person shall be granted a license hereunder unless such person is of good moral character . . . and no person shall be granted a license . . . who has been convicted, since the ratification of the twenty-first amendment to the Constitution of the United States, of a violation of the provisions of any law applicable to the manufacture or sale of intoxicating liquor . . .

Under the quoted segments of the statute, two disabling factors are present: (1) lack of good moral character, or (2) a conviction under a liquor law. In the instant case, it is agreed that denial of a license was based solely on ground number two, i. e., a liquor law conviction.

It is agreed generally that there are three views as to the *effect* a pardon has on the fact of conviction and the convicted person's guilt (moral character of the recipient thereof).[1] Punishment, if not previously administered, is eliminated under each view.

View # 1 is that conviction and guilt are both wiped out and obliterated.[2] Thus, it makes the offender as if he had not committed the offense in the first place.

View # 2 is that the fact of conviction is obliterated but the guilt remains.[3] Under this view, if disqualification is based solely on the fact of conviction the eligibility of the offender is restored. On the other hand, if good character (requiring an absence of guilt) is a necessary qualification, the offender is not automatically once again qualified—merely as a result of the pardon.

View # 3 is that neither the fact of conviction nor the guilt are obliterated— only the punishment.[4] Under this view, a pardon would have no effect whatsoever on disqualification statutes like that in question. The sole effect would be to excuse any portion of the punishment not then suffered—plus, perhaps, removal of certain "civil disabilities."

In *Hughes v. State Board of Health*, 348 Mo. 1236, 159 S.W.2d 277 (1942), this court considered a case wherein a physician's license was revoked on the statutory ground of "bad moral character" following his conviction for a crime involving moral turpitude. Hughes appealed on the ground that he had been pardoned. This court held, l.c. 279, that: "It cannot be construed as restoring good character." More specifically, at l.c. 280, it was concluded that: "Clearly the conviction of respondent [Hughes] of the crime of using the mails to defraud constituted evidence of bad moral character sufficient to sustain the action of the board in revoking his license. Respondent did not contend otherwise, but relied on the pardon to overcome the *effect* of the conviction. This he may not do." (Emphasis added.) Whether or not a pardon also obliterates the fact of conviction was not decided as that issue was not relevant to a decision. Cf: *Theodoro v. Department of Liquor Control*, 527 S.W.2d 350 (Mo. banc 1975).

Thus, at the time *Damiano v. Burge*, supra, was decided by the Court of Appeals, Kansas City District, in 1972, there was no controlling opinion by this court on the precise issue, i. e., the effect a pardon has on the fact of conviction reference disability statutes. Nevertheless, the court went on to resolve the problem and we quote a portion of the reasoning found in that opinion, l.c. 564–565, to wit:

"The effect of a pardon for various purposes has been very heavily debated, and the courts of this country have reached diverse results. We need not explore the ramifications of those arguments in all of the varied manners in which they have arisen. It is sufficient to confine ourselves to

1. See 58 A.L.R.3d 1194. It is difficult to place each case in a specific category due to uncertainty as to the precise issue involved and whether or not references to "guilt" were to "legal guilt" or "moral guilt."

2. *Ex parte Garland*, 4 Wall. (71 U.S.) 333, 380, 18 L.Ed. 366 (1866); *State ex rel. Cloud v. Election Board of State*, 169 Okl. 363, 36 P.2d 20 (1934); *Morris v. Hartsfield*, 186 Ga. 171, 197 S.E. 251 (1938); *In re Stephenson*, 243 Ala. 342, 10 So.2d 1 (1942); *In re Gowland*, 174 La. 351, 140 So. 500 (1932); *Ex parte Crisler*, 159 Miss. 247, 132 So. 103 (1931); *Stone v. Oklahoma Real Estate Commission*, 369 P.2d 642 (1962).

3. Apparently consistent with View # 2 are the following cases: *Slater v. Olson*, 230 Iowa 1005, 299 N.W. 879 (1941); *Commissioner of Metropolitan Dist. Com. v. Director of Civil Service*, 348 Mass. 184, 203 N.E.2d 95 (1964); *In re Lavine*, 2 Cal.2d 324, 41 P.2d 161 (1935); *Hogan v. Hartwell*, 242 Ala. 646, 7 So.2d 889 (1942); *People ex rel. Symonds v. Gualano*, 124 Ill.App.2d 208, 260 N.E.2d 284 (1970); *State ex rel. Dean v. Haubrich*, 248 Iowa 978, 83 N.W.2d 451 (1957); *In re Meyerson*, 190 Md. 671, 59 A.2d 489 (1948); *In re Kaufmann*, 245 N.Y. 423, 157 N.E. 730 (1927); and *Hankamer v. Templin*, 143 Tex. 572, 187 S.W.2d 549 (1945).

4. *Ridgeway v. Catlett*, 238 Ark. 323, 379 S.W.2d 277 (1964), and *State ex rel. Atty. Gen. v. Irby*, 190 Ark. 786, 81 S.W.2d 419 (Ark. 1935), cert. den. 296 U.S. 616, 56 S.Ct. 136, 80 L.Ed. 437.

the relatively narrow problem involved here: in the case of an application for an office or license which is prohibited to one who has been convicted of a crime, does a pardon reestablish eligibility?

"The intensive debate on this subject was initiated by the decision of the United States Supreme Court in *Ex parte Garland*, 4 Wall. 333, 18 L.Ed. 366, which arose immediately following the Civil War. In that case, the petitioner was an attorney who had been enrolled to practice before the United States Supreme Court prior to the war. During the Civil War, his state seceded and he served in the Confederate Legislature. After the war, he obtained a presidential pardon for his participation in the war. However, Congress enacted a statute requiring all members of the Bar to take an oath that they had not participated in the rebellion. Petitioner, of course, was not in a position to honestly take that oath, and he filed suit to be permitted to practice notwithstanding. The United States Supreme Court held that the pardon completely wiped out the petitioner's offense, and therefore, eliminated the necessity of the oath. In that connection, the court held as follows, l.c. 380, 18 L.Ed. 366:

" 'Such being the case, the inquiry arises as to the effect and operation of a pardon, and on this point all the authorities concur. A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restore him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

" 'There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.'

"The broad language used by the Court in the *Garland* opinion proved to be the source of the extensive disagreement. As early as 1915, the argument between the courts had become so heated that Professor Williston published an article 'Does a Pardon Blot Out Guilt?', 28 HLR 647, attempting to reconcile the diverse holdings. Professor Williston reviewed the many cases which had already been decided up to the date of his article on this subject. He, like many of the judges who had written on the subject, disapproved of the broad language of the *Garland* opinion. However, Professor Williston suggested that the seeming conflict of the decisions could be reconciled upon the following distinction, stated at page 653 of his article:

" 'The true line of distinction seems to be this: The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.'

"The fundamental distinction suggested by Professor Williston has been generally accepted and followed by the courts since the date of his article."

An application to transfer the cause, after opinion, was denied by this court on July 17, 1972. Consistent therewith, we now approve and adopt as our own the reasoning found therein and the conclusion reached. In other words, we adopt View # 2 as being the most compatible, of the three alternatives, with the power of an executive to pardon and the realities of life. As noted in the *Damiano* opinion, such a result is consistent with the holding of this court in *Hughes v. State Board of Health*,

supra, to the extent the instant question was considered in the latter case.

█ The state predicates much of its brief on the contention the liquor industry is so unique and distinctively different that a pardon for convictions relating to the same should have no effect thereon. It is a sufficient answer to point out that this court is not free to approve, nor even consider, the rationale suggested. The Constitution of Missouri in Article 4, § 7, in part, provides: "The governor shall have power to grant . . . pardons, after conviction, for all offenses except treason and cases of impeachment . . ." Consistent therewith is § 549.010, RSMo 1969, which states: "In all cases in which the governor is authorized by the constitution to grant pardons, he may grant the same, with such conditions and under such restrictions as he may think proper." Our task is to consider only the legal "effect" of a pardon. Since the offense involved was not one of the two excepted in the constitution, the power to grant the pardon is beyond challenge.

It is mentioned that an affirmance in this case "would be to tempt the [Supervisor] always to rely on 'good moral character' language in licensing statutes rather than more specific provisions requiring showings of actual convictions of specific laws in order to take adverse action on a license." Suffice it to say that we do not care to ascribe to the Supervisor any desire to review the qualifications of an applicant inconsistent with the existing facts and laws of this state.

█ It is suggested that some comment should be made as to the effect of today's decision on the holdings in *State v. Asher*, 246 S.W. 911 (Mo.1922); *State ex rel. Stewart v. Blair*, 356 Mo. 790, 203 S.W.2d 716 (banc 1947); and *State v. Durham*, 418 S.W.2d 23 (Mo.1967). They stand for the proposition that if a defendant is pardoned after conviction, he remains subject to the Habitual Criminal Act if he later commits a criminal offense. It would seem apparent that if a defendant is pardoned after conviction and, as decided today, that convic-

tion is thereby obliterated, such "obliterated conviction" could not be used as the basis for subjecting defendant to the Habitual Criminal Act if he later committed a criminal offense. Accordingly, from this time forward, the holdings in *Asher, Blair* and *Durham*, to the extent they conflict with this opinion, should no longer be followed.

The trial court correctly ruled that denial of a license to respondent solely because of the prior convictions was unauthorized.

The judgment is affirmed.

All concur.