# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-4142

_____

|  |  |  |
|---|---|---|
| Johnny Lee Wilson, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Lawrence County, Missouri, | * | Appeal from the United States |
| David Tatum, Individually and in | * | District Court for the |
| his official capacity, Doug Seneker, | * | Western District of Missouri. |
| Individually and in his official | * | |
| capacity, Bill Wegrzyn, Individually | * | |
| and in his official capacity, | * | |
| Steve Kahre, Arthur Owens, | * | |
| John Does 1-20, Individually and in | * | |
| their official capacities, | * | |
| | * | |
| Appellees. | * | |
| _____ | * | |
| | * | |
| The National Advisory Group for | * | |
| Justice, | * | |
| | * | |
| Amicus on Behalf of | * | |
| the Appellant. | * | |

_____

Submitted: May 15, 1998
Filed: August 17, 1998

_____

Before BEAM, LOKEN, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

Johnny Lee Wilson appeals the district court's adverse grant of summary judgment in this action under 42 U.S.C. § 1983, which seeks damages from the defendants for wrongfully arresting and incarcerating Wilson in violation of his constitutional rights. We reverse and remand for trial.

## I.    BACKGROUND

In 1986, county officials arrested Wilson, who is mentally retarded, in connection with the murder of an elderly woman. Wilson was charged with capital murder under Missouri law. In order to avoid the possibility of the death penalty, he submitted an Alford plea[1] to first-degree murder. Wilson was convicted and sentenced to life imprisonment without the possibility of probation or parole.

In September of 1995, after Wilson had spent more than nine years in prison, Missouri Governor Mel Carnahan granted him the following pardon:

> I, MEL CARNAHAN, GOVERNOR OF THE STATE OF MISSOURI, have had presented to me a request for the pardoning of Johnny Lee Wilson, who was on the 30th day of April, 1987, by a judgment of the Circuit Court of Jasper County, sentenced for the crime of First Degree Murder. After examination of the application and the facts relevant thereto, and upon the recommendation of the Board of Probation and Parole, I hereby grant to Johnny Lee Wilson a full pardon from the above

---

[1]With an Alford plea, the defendant pleads guilty and consents to the imposition of a sentence while still proclaiming his innocence of the charged offense. See North Carolina v. Alford, 400 U.S. 25, 37 (1970). The court is obliged to find "strong evidence of actual guilt" before accepting such a plea. Id.

conviction. This pardon obliterates said conviction so that I hereby relieve Johnny Lee Wilson from the obligation to satisfy any part of the sentence for said conviction which may remain unsatisfied, restore to him all rights of citizenship forfeited by said conviction, and remove any legal disqualification, impediment or other legal disadvantage which may be a consequence of said conviction.

App. at 80. Governor Carnahan also issued an accompanying statement explaining the reasons for his decision to pardon Wilson:

As a result of an intense investigation conducted by my office, I have decided to issue a pardon to Johnny Lee Wilson because it is clear he did not commit the crime for which he has been incarcerated.

. . . .

It is common for convicted criminals to make claims of innocence. In almost all of these cases, the claims of innocence are false. However, in this case, it is clear that Johnny Lee Wilson's claim is true.

To meet my responsibilities under the Constitution, this office has conducted an exhaustive investigation into the facts of this case. We have spent literally hundreds of hours re-examining the evidence in this case. We have reviewed all the transcripts and re-interviewed the key witnesses including the prosecutor and law enforcement officials involved in this case.

. . . .

From this investigation, it is clear that Johnny Lee Wilson's confession is false and inaccurate. Furthermore, there is no evidence to corroborate or substantiate it. Quite to the contrary, there is significant evidence to indicate that it is false.

It is evident that the only facts this mentally retarded man knew about this hideous crime were the facts given to him by investigators who

felt pressure to solve the case quickly. And virtually all the information Wilson himself tried to offer about the crime—in response to the investigator's questions—was inaccurate and inconsistent with the known facts.

In fact, the original motivation for Wilson's arrest has been removed. The person who originally accused Wilson of committing the crime has recanted his accusation and now admits that the statement he made to police was untrue.

. . . .

. . . [I]n the case of Johnny Lee Wilson, we have locked up an innocent, retarded man who is not guilty of the crime of which he was accused.

App. at 82-83.

Following his release from prison, Wilson filed this action against Lawrence County and various named and unnamed law enforcement officials. The complaint raised claims under state tort law as well as 42 U.S.C. § 1983, alleging that the defendants had "conducted a biased investigation by intimidating and coercing witnesses" and "provided information, knowing it was false and/or misleading or in reckless disregard for the truth or falsity of the information, to the prosecution and the court in an effort to obtain Wilson's conviction at any apparent cost," resulting in Wilson's conviction and incarceration in violation of his rights. The defendants moved to dismiss Wilson's federal claim under Rule 12(b)(6) or, in the alternative, for summary judgment. The district court granted summary judgment in favor of the defendants on the section 1983 claims, and declined to exercise supplemental jurisdiction over Wilson's remaining state law claims. Wilson appeals.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo. See Smith v. Jenkins, 919 F.2d 90, 92 (8th Cir. 1990). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All facts and inferences are viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The question before us is whether the defendants are entitled to judgment as a matter of law.

A claim is not cognizable under section 1983 where a judgment in favor of the plaintiff would necessarily imply invalidity of the plaintiff's state conviction or sentence, unless the conviction or sentence has already been invalidated. See Heck v. Humphrey, 512 U.S. 477, 487 (1994). The plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87.

The parties agree that a favorable resolution of at least some of Wilson's 1983 claims would imply that his conviction was invalid.[2] Therefore, under Heck, he cannot maintain this 1983 action absent a showing that his conviction has been invalidated by some means independent of the instant proceeding. Wilson asserts that his conviction was "expunged by executive order" by virtue of his full pardon from the governor. The defendants disagree. The district court, relying on Missouri law, concluded that a person who is pardoned by the governor remains guilty in the eyes of the Missouri court and therefore cannot bring a 1983 claim for wrongful incarceration. In our view,

---

[2]We do not address the issue of which claims imply the invalidity of Wilson's conviction and which do not. Nor do we consider whether any of the claims may be time-barred. Those potential issues were not before the district court and are not advanced on appeal.

however, the issue in this case is one of federal law.[3]  Cf. Smith v. Holtz, 879 F. Supp. 435, 443 (M.D. Pa. 1995) (holding that the common law of malicious prosecution should not be read into 1983 beyond the boundaries of Heck because "we are here formulating a body of federal substantive law—determining the elements of a federally-enacted cause of action").  The relevant question is whether Wilson's pardon invalidated his conviction within the meaning of Heck.  We find that it did.

Though Heck does not list an executive pardon among the ways a state conviction can be invalidated for purposes of 1983, it "certainly seem[s] to be within the reach of the Court's language."  Snyder v. City of Alexandria, 870 F. Supp. 672, 686 (E.D. Va. 1994) (finding that a 1983 plaintiff's pardon for innocence falls within Heck's description of the ways a conviction can be invalidated).  Heck expressly approves the method of "expunge[ment] by executive order."  The term "expunge" has two different connotations.  It can mean "[t]he act of physically destroying information—including criminal records—in files, computers, or other depositories." Black's Law Dictionary 582 (6th ed. 1990).  Its more common meaning, however, is figurative:  "[t]o destroy; blot out; obliterate; erase; efface designedly; strike out

---

[3]Even if it were necessary to resort to state law to inform our decision on this federal question, we would find that a governor's pardon does invalidate a conviction in the State of Missouri.  The Missouri Supreme Court determined the legal effect of a gubernatorial pardon in Guastello v. Department of Liquor Control, 536 S.W.2d 21 (Mo. 1976).  In Guastello, the court adopted the view that, in Missouri, a full pardon "obliterate[s]" "the fact of conviction," "but the guilt remains."  Id. at 23-24.  The "guilt" to which the court referred was not the "legal guilt," but the "moral guilt," or the "moral character," of the pardonee.  Id. at 23 & n.1.  The Department of Liquor Control was not free to deny Guastello a liquor license based on his prior conviction, the court held, because that conviction was obliterated when the governor granted him a full pardon.  Id. at 25.  If, under the law of Missouri, a gubernatorial pardon has the effect of "obliterat[ing]" a state conviction, it can properly be said to "expunge" and "invalidate" that conviction as well.

wholly."  Id.; see also The Random House Dictionary of the English Language 683 (2d ed. 1987) ("to strike or blot out; erase; obliterate").

None of the other authorized methods of challenging the validity of a state conviction—direct appeal, state collateral proceedings, and federal habeas review—all of which the Court mentioned in the same breath as "expunge[ment] by executive order," entails the literal destruction, or "expungement" of the record of conviction.  It is highly unlikely that the Court intended arbitrarily to impose that requirement in this one category of cases.  Thus, we think the Court intended the figurative meaning of "expunge."

In this sense, Wilson's pardon did "expunge" his conviction "by executive order." Governor Carnahan, acting within his authority under the Missouri Constitution, see Mo. Const. Art. IV, Sec. 7, issued Wilson a full pardon, stating, "it is clear [Wilson] did not commit the crime for which he has been incarcerated."  The pardon states on its face that it "obliterates said conviction."  Wilson's pardon is therefore an "executive order" that "expunged," "obliterated," and "invalidated" his conviction.  Heck requires nothing more.

The district court determined that the requirements of Heck were designed, in part, to avoid the possibility of inconsistent outcomes based on the same transaction. Because Wilson was adjudicated guilty, the court reasoned that Heck prevents the inconsistency of allowing him to recover damages for his wrongful conviction.  This is to turn Heck on its head.  Any successful collateral attack on a conviction necessarily results in inconsistent outcomes based on the same transaction.  Heck does not prevent this.  In fact, Heck condones collateral proceedings as a mechanism for satisfying its mandates.  A federal writ of habeas corpus does not reverse or void the state judgment of conviction.  See Rimmer v. Fayetteville Police Dep't, 567 F.2d 273, 277 (4th Cir. 1977) (observing that "the state court judgment is neither reversed nor vacated" when a federal court issues a writ of habeas corpus); Smith v. Spina, 477 F.2d 1140, 1147

(3d Cir. 1973) (stating that a federal writ of habeas corpus "does not have the force and effect of voiding a conviction").  It does, however, by Heck's own terms, "invalidate" the conviction for purposes of bringing a section 1983 claim challenging that conviction.  Indeed, the only way a state conviction could be "invalidated" without the consequence of inconsistent outcomes based on the same transaction is reversal on direct appeal.  The invalidation requirement of Heck is not limited, however, to the direct appeal process.

The gist of Heck is that section 1983 is not an appropriate vehicle for attacking the validity of a state conviction.  Wilson does not seek to put it to this improper use. He used the executive clemency process, which the Supreme Court has expressly approved, as the forum in which to challenge his criminal conviction.  See Herrera v. Collins, 506 U.S. 390, 411-17 (1993).  In Herrera, the Court described pardons as "provid[ing] the 'fail safe' in our criminal justice system," noting that "history is replete with examples of wrongfully convicted persons who have been pardoned in the wake of after-discovered evidence establishing their innocence."  Id. at 415 (citations omitted).  The present case is a prime example of the usefulness of the pardon process to vindicate the innocent, and it demonstrates that the Court's faith in the viability of executive clemency was not misplaced.  Section 1983 rightly provides a remedy to an innocent man whose constitutional rights have been violated by an erroneous conviction and wrongful nine-and-one-half-year incarceration.

We find that, by virtue of the pardon he received from Missouri's governor, Wilson's conviction was invalidated and "expunged by executive order" within the meaning of Heck.  Accordingly, we reverse the district court's grant of summary judgment.

Because Wilson's federal claim is cognizable, the district court had no discretion to dismiss his state law claims, as they are so intertwined with his section 1983 claim that they form part of the same case or controversy.  See 28 U.S.C. § 1367.

-8-

## III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is reversed, Wilson's state law claims are reinstated, and the case is remanded for trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.