

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| MARK T. MCCLOSKEY, | ) | No. ED111639 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 2122-CC08989 |
| | ) | |
| STATE OF MISSOURI, SHERIFF | ) | Honorable Joan L. Moriarty |
| VERNON BETTS, AND MAYOR | ) | |
| TISHAURA JONES, | ) | |
| | ) | |
| Respondents. | ) | Filed: December 26, 2023 |

Before John P. Torbitzky, P.J., James M. Dowd, J., and Michael S. Wright, J.

## OPINION

This appeal arises out of a petition for replevin in which appellant Mark McCloskey sought the return of two firearms that police had seized pursuant to search warrants in connection with a June 28, 2020, incident in which McCloskey and his spouse exhibited the firearms as a group of protesters passed by their home. They were charged with felony unlawful use of a weapon punishable by up to four years in prison. McCloskey and the State reached a plea agreement whereby McCloskey pleaded guilty to misdemeanor fourth-degree assault and forfeited ownership and possession in the two firearms in exchange for the State dismissing the felony charge. The trial court accepted the plea and entered judgment of conviction against McCloskey for the misdemeanor assault charge.

Soon after, the governor pardoned McCloskey and he filed against the State, the Sheriff, and the Mayor (Respondents) his underlying petition for replevin of the weapons in which he claimed the governor's pardon gave him the right to their immediate return. Respondents refused and then moved for judgment on the pleadings which the trial court granted.

McCloskey now appeals asserting that the trial court erred and that he is entitled to the weapons because (1) the governor's pardon restored "all rights of citizenship forfeited by said conviction and remove[d] any legal disqualification, impediment, or other legal disadvantage," (2) his petition and affidavit to obtain immediate possession of the property satisfied Missouri's replevin rule and statute, and (3) judgment on the pleadings was not proper because the trial court relied on disputed, fictitious, and invented facts and there were factual issues regarding the seizure and McCloskey's right to the weapons that should have been tried to a jury.

While we agree that the pardon restored all of his rights forfeited by the conviction and removed any legal disqualification, disadvantage, or impediment, Missouri law is unequivocal that a gubernatorial pardon obliterates the fact of the *conviction*, not the fact of *guilt*. *Guastello v. Department of Liquor Control*, 536 S.W.2d 21, 23 (Mo. banc 1976). Thus, McCloskey's guilty plea, for which he obtained the benefit of the State dismissing a felony charge punishable by jail time, survived the pardon and importantly, with respect to the issue at hand in this replevin action, triggered the guns' forfeiture. Therefore, since McCloskey's guilt remains, it follows that he is not entitled to the return of the weapons.

**Background**

On June 28, 2020, McCloskey and his spouse each exhibited a firearm as a group of protesters passed by their home in the City of St. Louis. On July 10 and 11, 2020, police seized pursuant to warrants McCloskey's Colt AR-15 rifle and Bryco .380 pistol in connection with the

2

June 28 incident. The State then charged McCloskey with felony unlawful use of a weapon in violation of section 571.030.1(4).[1]

On June 17, 2021, McCloskey pleaded guilty to misdemeanor fourth-degree assault pursuant to a plea agreement he reached with the State. Under the agreement, which the court accepted, McCloskey forfeited to the City police and sheriff's departments his ownership and possession of the rifle and pistol.

On July 30, 2021, Governor Michael L. Parson pardoned McCloskey stating, "I hereby grant to [McCloskey] a full pardon from the above conviction. This pardon obliterates such conviction so I hereby restore all rights of citizenship forfeited by said conviction and remove any legal disqualification, impediment, or other legal disadvantage that may be a consequence of said conviction."

On August 4, 2021, McCloskey filed this petition for replevin together with his affidavit under Rule 99.03[1] claiming Respondents had no basis to retain the firearms because the pardon triggered his right to get the guns back. McCloskey reiterated this basic claim in his motion for the immediate return of the firearms and in his amended petition for replevin.

On January 3, 2022, Respondents moved for judgment on the pleadings alleging that the guns were lawfully seized by police in the course of a criminal investigation and prosecution, that McCloskey bargained away his ownership and possessory rights in the guns as a result of his plea agreement, and that the pardon did not entitle him to the return of the guns. On March 10, 2022, the trial court denied McCloskey's motion and on December 28, 2022, the trial court granted Respondents' motion for judgment on the pleadings holding that the pardon did not

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise stated.
[1] All rule references are to the Missouri Supreme Court Rules (2021).

3

entitle McCloskey to recover ownership and possession of the firearms because although the pardon obliterated his conviction, it did not void his guilt or guilty plea. McCloskey appeals.

## Standard of Review

We review a trial court's ruling on a motion for judgment on the pleadings *de novo*. *Bell v. Phillips*, 465 S.W.3d 544, 547 (Mo. App. W.D. 2015). "[A] motion for judgment on the pleadings should be sustained if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law." *Madison Block Pharmacy, Inc. v. U.S. Fidelity and Guaranty Co.*, 620 S.W.2d 343, 345 (Mo. banc 1981). "The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion." *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007). "Before the court can grant a motion for judgment on the pleadings, 'all averments in all pleadings must show no material issue of fact exists; that all that exists is a question of law.'" *Paragon Lawns, Inc. v. Barefoot, Inc.*, 304 S.W.3d 298, 300 (Mo. App. W.D. 2010) (quoting *RGB2, Inc. v. Chestnut Plaza, Inc.*, 103 S.W.3d 420, 424 (Mo. App. S.D. 2003)).

## Discussion

### I. Effect of the Gubernatorial Pardon

In his first point, McCloskey argues that the trial court erred because his right to possession and ownership of those guns was reinstated by the pardon which by its terms "restore[d] all rights of citizenship forfeited by said conviction and remove[d] any legal disqualification, impediment, or other legal disadvantage ...." We disagree because the scope of the pardon ends at the obliteration of the conviction.

We are guided by the principles set forth in *Guastello*, where the Missouri Supreme Court examined the effect of a gubernatorial pardon on Guastello's conviction for selling liquor

4

on a Sunday to which he had pleaded guilty. 536 S.W.2d at 22. The department denied Guastello's application for another liquor license based on the statute's mandate that no person convicted of a liquor law violation could receive a liquor license. *Id.*

The *Guastello* Court exhaustively examined three different approaches by courts across the country to the issue of the effect of a pardon and adopted the view that while a pardon obliterates the fact of the conviction, the guilt remains. *Id.* at 23. "Under this view, if disqualification is based solely on the fact of conviction the eligibility of the offender is restored. On the other hand, if good character (requiring an absence of guilt) is a necessary qualification, the offender is not automatically once again qualified—merely as a result of the pardon." *Id.* Because Guastello's conviction was obliterated by the pardon, and the statute only disqualified those who had a conviction, the Court held that the denial of the license was unauthorized. *Id.* at 24, 25. Thus, in defining the scope of a gubernatorial pardon in this way, the Supreme Court drew a critical distinction between the pardoned conviction and the underlying guilt which we find to be dispositive here.

In *Hill v. Boyer*, 480 S.W.3d 311, 313 (Mo. banc 2016), Hill pleaded guilty to and was convicted of felony forgery. He was discharged from probation pursuant to section 549.111.2 (RSMo 1969) which provided that those discharged from probation were "restored all the rights and privileges of citizenship."[2] *Id.* The sheriff had denied Hill's application for a concealed carry gun permit under section 571.101.2(3) (RSMo Supp. 2012) which prohibited granting such permits to those who had pleaded guilty to or been convicted of a crime punishable by imprisonment for a term exceeding one year. *Id.* In ruling against Hill, the Supreme Court

---

[2] Hill argued that "his statutory restoration of rights is legally equivalent to a governor's pardon and had the effect of negating the fact of his prior conviction." *Id.* at 314.

reiterated its *Guastello* holding that while the statute may have "obliterated" the fact of his prior conviction, it did not obliterate his guilty plea or the fact of his guilt. *Id.* at 315 (citing *State v. Bachman*, 657 S.W.2d 41, 51 (Mo. App. W.D. 1984)). *See also Stallsworth v. Sheriff of Jackson County*, 491 S.W.3d 657 (Mo. App. W.D. 2016).

In *Fay v. Stephenson*, 552 S.W.3d 753, 755-56 (Mo. App. W.D. 2018), the court also relied on *Guastello* in finding Fay, who was pardoned several years after he had pleaded guilty to three felonies, was nevertheless ineligible to run for associate circuit judge under section 115.306.1's dictate that "[n]o person shall qualify as a candidate for elective public office … who has been found guilty of or pled guilty to a felony …." Again, the pardon extinguished the fact of his *convictions*, but not the fact of his *guilt* by way of his guilty pleas. *Id.* at 756.

We find the foregoing authorities to be applicable here and dispositive. The law recognizes the difference between a conviction and guilt. Here, McCloskey pleaded guilty to misdemeanor assault and voluntarily forfeited his firearms in exchange for the State dismissing a felony charge punishable by imprisonment. Thus, his inability to recover his firearms is not a legal disqualification, impediment, or other legal disadvantage that is a consequence of his conviction. Rather, the permanent forfeiture is a consequence of his guilt. And because only the conviction is obliterated by the pardon and McCloskey's guilt remains, we find that the governor's pardon does not entitle him to possession of his forfeited firearms. Point I is denied.

## II. An Action for Replevin under Rule 99

McCloskey next asserts that the court erred in denying his motion for the "immediate possession" of the firearms because section 533.020 requires such a result upon the mere filing of his motion and affidavit demonstrating his entitlement to possession. We need not determine whether any procedural shortcomings occurred because McCloskey's underlying replevin action

6

failed and therefore any issue with regard to the court's handling of McCloskey's request for prejudgment seizure is of no consequence. *Clifford Banking Co. v. Bankhead*, 738 S.W.2d 948, 949 (Mo. App. E.D. 1987).

"Replevin is a possessory action to obtain property that is in the defendant's possession." *Patterson v. Rough Road Rescue, Inc.*, 529 S.W.3d 887, 893 (Mo. App. E.D. 2017). "Replevin requires proof of the following three elements: (1) that the plaintiff owned the property or was entitled to possess it; (2) that the defendant took possession of the property with the intent to exercise some control over it; and (3) that the defendant, by exercising such unauthorized control over the property, deprived the plaintiff of his right to possession." *Id.* The plaintiff has the burden of proof. *Id.*

Rule 99 governs the procedures in a replevin action. Rule 99.01 states that "[a] person claiming the right to possession of personal property may bring an action for replevin for possession of the property." Rule 99.03 prescribes that when a party requests the *immediate* prejudgment possession of personal property, an affidavit shall be filed that contains the description of the property, facts showing the party is entitled to its possession, the actual value of the property, that the property was not seized under any legal process, and that the party is in danger of losing the property unless immediate possession is obtained. Rule 99.04 states that "[i]f the court finds that the facts stated in the affidavit show that the party has the right to immediate possession an order shall be issued directing the sheriff to take possession of the property and deliver it to the party ...." Section 533.010 *et seq.*, Rule 99's statutory counterpart, recites generally the same notions.

In *Clifford*, the jury found in favor of plaintiff on his replevin claim and on appeal, defendants asserted that defects in the procedure by which the plaintiff obtained prejudgment

7

possession of the property deprived the court of jurisdiction to entertain the substantive replevin suit and therefore the judgment was void. 738 S.W.2d at 948. This Court disagreed, stating that "defects in the procedure by which a plaintiff obtains prejudgment possession of chattels do not taint the underlying suit ...." *Id.* at 949. It further held that because "[t]he jury ha[d] determined that plaintiff, not defendants, had a superior right to possess the cattle at the time this suit was filed ... any alleged flaws in the prejudgment possession procedure cease to be of any consequence." *Id.* (citing *Seymour Bank v. Kelley*, 715 S.W.2d 586, 591 (Mo. App. S.D. 1986)) (stating that "it was ultimately determined that, at the time the property was seized, the suing party had the superior right to possession, the same issue the trial court was required to determine at the time of entry of the order for prejudgment seizure.").

Thus, any purported flaws in the prejudgment procedure here, such as the trial court's rejection of McCloskey's request for immediate possession, is of no consequence in light of our affirmance of the trial court's judgment that rejected McCloskey's replevin claim because he has no right whatsoever to possession of the firearms as a matter of law.

Point II is denied.

### III. The Judgment's Reference to Disputed Facts

In his third point, McCloskey claims the trial court violated the standard of review applicable to a motion for judgment on the pleadings by failing to accept as true the petition's pleaded facts and improperly assuming as true certain disputed facts. We are unpersuaded. We glean from his brief that McCloskey takes issue with the following references in the court's judgment: (1) that the court inaccurately stated that McCloskey's AR-15 rifle was "an *assault* rifle;" (2) that the protesters were "peaceful" when McCloskey disputed that notion; (3) that McCloskey had threatened multiple people when he admitted to threatening just one; (4) that

8

McCloskey and his spouse tampered with one of the firearms; and (5) that McCloskey's spouse's charge was also reduced to fourth-degree assault.

Our review demonstrates that the court did not rely on these matters to arrive at its judgment which solely addressed the discreet legal question whether the pardon obliterated the gun forfeiture. Rather, the undisputed material facts buttressing the court's judgment on the pleadings were that McCloskey voluntarily pleaded guilty to misdemeanor assault, that he forfeited his ownership and possession of the guns in exchange for the State dismissing the felony charge, and that the governor pardoned McCloskey's conviction.

Since the only issue before the trial court was a purely legal question—whether the pardon extinguished McCloskey's conviction *and* his guilt—and the pleadings themselves did not contain any disputed facts, the complained of comments that the court included in its judgment were irrelevant. *Madison Block Pharmacy, Inc.*, 620 S.W.2d at 345 ("[A] motion for judgment on the pleadings should be sustained if, *from the face of the pleadings*, the moving party is entitled to judgment as a matter of law." (Emphasis added)). And it ruled that, based on the pleadings, the pardon did not reinstate McCloskey's right to possession and ownership of the weapons because while it extinguished his conviction, it did not extinguish his guilt or the consequences flowing from his guilty plea. Point III is denied.

### IV. Constitutional Question Regarding the Seizure of the Firearms

Lastly, McCloskey asserts he should have been allowed to try to the fact finder whether his firearms had been unconstitutionally seized in violation of the Second Amendment and further that their seizure was illegal in violation of his right to self-defense in conjunction with

9

the castle doctrine.[6] While McCloskey's brief presents those interesting issues, none of them are before us. Instead, those issues could have been raised at the trial of the underlying charges had McCloskey not chosen to plead guilty to a lesser charge in exchange for surrendering the firearms at issue here. His guilty plea cleared the slate.

"A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *State v. Rohra*, 545 S.W.3d 344, 347 (Mo. banc 2018) (internal quotations omitted). When a defendant pleads guilty, he is admitting guilt of the substantive crime. *Id.* Additionally, "the general rule is that a guilty plea waives all nonjurisdictional defects, including statutory and constitutional guarantees." *Garris v. State*, 389 S.W.3d 648, 651 (Mo. banc 2012). "Among those defenses waived by a guilty plea is a claim of self-defense." *Courtney v. State*, 662 S.W.3d 344, 350 (Mo. App. W.D. 2023) (citing *Rice v. State*, 585 S.W.2d 488, 494 (Mo. banc 1979)).

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Hampton v. State*, 495 S.W.2d 638, 642 (Mo. 1973). This is exactly what McCloskey is attempting to do. In his brief he describes at great length the history and purposes of the Second Amendment and the castle doctrine and argues that the firearms were seized unconstitutionally under the Second Amendment and illegally under the castle doctrine because he had a right to

---

[6] Missouri law recognizes the "castle doctrine" codified in section 563.031.2(2). *State v. Straughter*, 643 S.W.3d 317, 321 (Mo. banc 2022). "Under the castle doctrine, a person need not face death, serious physical injury, or any forcible felony to respond with deadly force. Rather, Missouri's castle doctrine provides that a person is justified in using deadly force 'to defend [himself] or a third person from what [he] reasonably believes to be the use or imminent use of unlawful force by such other person'...." *Id.* at 321-22.

10

protect his home in this way. McCloskey ignores the fact that he had the opportunity to submit these theories of self-defense in the underlying action but instead decided to plead guilty. By pleading guilty, he waived his ability to now claim that his conduct on June 28 was an act of self-defense. *Garris*, 389 S.W.3d at 651; *Courtney*, 662 S.W.3d at 350.

Point IV is denied.

## Conclusion

For these reasons, we affirm the judgment.

James M. Dowd, Judge

John P. Torbitzky, P.J. and
Michael S. Wright, J. concur.